Filed 8/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PATRICK J. RIVELLI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> FRANK HEMM et al., <br><br> Defendants and Respondents. | H046878 <br> (Santa Clara County <br> Super. Ct. No. 18CV326785) |

In this appeal, we decide whether a Swiss company and its executive vice president, a Swiss citizen and resident, are subject to suit in California court for claims related to the purchase by the Swiss company of shares of a privately-held California corporation. The trial court granted the Swiss defendants' motions to quash service of summons for lack of personal jurisdiction. For the reasons explained below, we affirm the order.

## I. FACTS AND PROCEDURAL BACKGROUND

*A. Facts*[1]

Appellants Patrick Rivelli (Rivelli) and Pinecroft Ventures, LLC (Pinecroft) are Series A preferred shareholders in Rodo Medical, Inc. (Rodo), a medical device company

---

[1] These facts are taken from the pleadings and evidence submitted in support of and in opposition to the motions to quash service of summons, including sworn declarations, jurisdictional discovery responses, and the agreements comprising the transaction underlying the dispute, which have been filed under seal. Except where noted, the facts presented are undisputed.

in the field of dental implants. Rivelli is a resident of Massachusetts, and Pinecroft is a Nevada limited liability company with its primary place of business in Incline Village, Nevada. Rodo is a California corporation with its primary place of business in San Jose, California.

Rivelli and Pinecroft (together, appellants) filed this lawsuit against Rodo and certain Rodo officers and directors (collectively, defendants).[2] Only two of these defendants—Institut Straumann AG and Frank Hemm (together, respondents or Swiss defendants)—are party to this appeal. Institut Straumann AG (Straumann) is a foreign corporation with its primary place of business in Basel, Switzerland. Straumann, like Rodo, manufactures and distributes dental supplies and equipment, specializing in tooth replacement and restoration. Straumann holds a minority equity ownership interest in Rodo. Frank Hemm (Hemm) is a citizen and resident of Switzerland. Hemm is a corporate officer of Straumann and, at all times relevant to this appeal, was a Rodo director.

Appellants Rivelli and Pinecroft acquired their shares in Rodo in 2010, shortly after Rodo was founded. They were among several investors who bought Series A Preferred Stock (Series A) in Rodo based on various representations by the company, including that Series A shareholders would retain a liquidation preference over common stockholders, would have their own representative on Rodo's board of directors, would have certain preemption and anti-dilution rights, and that the Series A shares would be non-redeemable.

In 2014, Straumann—the Swiss company—acquired a 12 percent minority interest in Rodo. Hemm, an executive vice president of Straumann, joined Rodo's board of

---

[2] The defendants named in the operative first amended complaint are corporate defendants Rodo Medical, Inc. and Institut Straumann AG, and individual or director defendants Frank Hemm, Young Seo, Amir Abolfathi, Greg Garfield, Kevin Mosher, and Mike Winzeler.

2

directors in April 2016.[3]  Hemm served as a Rodo director, and at times as a member of the Rodo board's compensation committee, until May 2018.

In late 2016, Rodo received approval from the United States Food & Drug Administration (FDA) to sell its dental device.  Rodo's management began to negotiate with Straumann the terms of a stock purchase agreement, referred to by the parties as the "Straumann Transaction" (hereafter, "the transaction").  The transaction ultimately increased Straumann's equity interest in Rodo from 12 percent to 30 percent.

From September 2016 through December 2016, Hemm participated on behalf of Straumann in Rodo board discussions concerning the transaction, but Hemm asserts he did not participate in the Rodo board's decisions or in the vote approving the transaction. Rodo's board meetings were conducted in California.

Hemm attended Rodo board meetings on at least 13 occasions between September 2016 and April 2018, primarily by phone and at least once in person.  According to Hemm, his role as a Rodo director during that time "centered on providing insight to Rodo regarding the suitability of its product portfolio and its commercialization strategy (sales channels, pricing, regulatory requirements) in and outside the United States." According to appellant Rivelli, Hemm traveled to California to attend board meetings in person in September 2016 and December 2016 and did not fully recuse himself from negotiations or discussions related to the transaction but instead attempted to dissuade the board from considering deals with other investors.

In March 2017, Rodo's board approved the transaction and authorized Rodo's management to solicit shareholder approval of the transaction.  An information statement

_____

[3] Although Hemm's verified declaration states that he served as a member of the Rodo board of directors from approximately April 2017 until May 7, 2018, it is apparent from respondents' briefing on appeal, as well as from other parts of the record (including Hemm's responses to plaintiff's special interrogatories re: personal jurisdiction), that Hemm served on the Rodo board of directors from approximately April 2016 until May 7, 2018, while Institut Straumann executive Guillaume Dannelliot served on the Rodo board of directors from approximately April 2017 until May 7, 2018.

detailing the transaction, its risks and benefits, and the consequences of its approval was sent to Rodo shareholders, requesting their written consent. Hemm did not participate in the drafting of the information statement. For those shareholders holding shares of preferred stock, the information statement further asked them to sign amended and restated voting, investor rights, and co-sale agreements.

The transaction closed on April 13, 2017, at the Palo Alto, California offices of Rodo's legal counsel. The transaction is memorialized in a set of at least eight documents, including an amended and restated investor rights agreement, an amended and restated voting agreement, a stock purchase and exchange agreement, an exclusive distribution agreement, a right of first refusal agreement, a revolving line of credit term sheet, and an indemnification agreement.[4] Hemm signed the agreements on behalf of Straumann, as did Straumann's general counsel, Dr. Andreas Meier.

Through the transaction, Straumann gained an additional seat on the Rodo board of directors (for a total of two seats), became Rodo's exclusive worldwide distributor (excepting the United States, Canada, Hong Kong and South Korea) under an exclusive distributorship and license agreement, agreed to establish a revolving $5 million line of credit between Straumann and Rodo (if requested by Rodo and subject to negotiation of a separate credit agreement), and gained "considerable influence over the long-term viability of" Rodo, as explained in the information statement presented to Rodo's shareholders. The transaction limited Rodo's control of acquisition and financing for four to six years and rendered shares held by shareholders other than Straumann, including those of the Series A shareholders, subject to redemption.

---

[4] The agreements that together comprise the transaction are part of the sealed record, as is the information statement furnished by Rodo for the purpose of summarizing the proposed transaction and soliciting the written consent of Rodo's shareholders to approve the transaction and adopt the agreements. In accordance with their sealed status, we have limited our references in this opinion to those terms of the agreements described by the parties in their briefs, which have not been filed under seal.

The transaction documents state that proceeds of the sale of shares to Straumann are to be used for general working capital for Rodo. The exclusive distributorship and license agreement imposes obligations on both companies. These obligations include Rodo's provision of cooperation, information, material, and support to Straumann, Rodo's provision of reasonable assistance in any regulatory approval process, and Straumann's commitment to meeting annual milestones related to purchasing Rodo's product and issuing purchase orders to Rodo. The exclusive distributorship and license agreement also gives Straumann the right to manufacture accessory products compatible with Rodo's products, and for Rodo to receive a royalty on those sales. The distributorship agreement does not select California law to govern the agreement; however, the other agreements, including the stock purchase agreement, each contain a California choice of law provision.

Appellant Rivelli states that he was the only Rodo board member who opposed the transaction. According to the information statement, upon the close of the transaction Rivelli would "no longer be a director" of Rodo. Rivelli alleges, however, that he was removed from the board without a shareholder vote, in breach of the voting agreement and California law. Rivelli communicated his concerns about the transaction to the Rodo board, both in person and in writing, before filing this civil action in April 2018.

*B. Procedural Background*

The operative, first amended complaint (complaint) asserts causes of action against Hemm and Straumann, for fraud,[5] breach of fiduciary duty (against Hemm, among other directors), aiding and abetting breach of fiduciary duty (against Straumann), and statutory violations of the Corporations Code. It alleges, in relevant part, that defendants materially mispresented the transaction to Rodo's shareholders to obtain their

---

[5] The fraud cause of action is brought derivatively on behalf of Rodo. In addition to the claims detailed here, the complaint alleges causes of action against the other defendants, which are not relevant to this appeal.

5

consent; that the director defendants—aided and abetted by Straumann—breached their fiduciary duties by failing to act in the best interests of Rodo and its shareholders and by engaging in self-dealing; and that defendants violated California law by replacing a seat on the board without the written consent of those shareholders entitled to vote for the election of directors, by withholding company information from a director, and by altering the rights of Series A shareholders without a separate vote. The complaint seeks declaratory and injunctive relief, rescission of the transaction, and compensatory and punitive damages.

After initial attempts to serve a copy of the summons and complaint on Straumann, and a dismissal without prejudice based in part on improper service after the trial court granted an earlier motion to quash brought by Straumann, appellants effected service of the summons and complaint on both Straumann and Hemm through the Hague Service Convention. In response, respondents each appeared specially and moved to quash for lack of personal jurisdiction. The separate motions to quash service of summons asserted that appellants could not satisfy their burden of establishing personal jurisdiction because they could not demonstrate purposeful availment by either Straumann or Hemm of the benefits of the California forum, nor that the controversy was related to or arose out of Straumann's or Hemm's contacts with the forum.

Straumann submitted the following uncontroverted evidence in support of its motion to quash. Straumann is incorporated under the laws of Switzerland, with its principal place of business in Basel, Switzerland, and is a wholly owned subsidiary of a Swiss holding company with its principal place of business in Switzerland. Straumann is not incorporated in any state in the United States, has no employees in the United States, and does not market or manufacture products in the United States. Straumann has no real property or bank accounts in California, is not registered to do business in California, and has not authorized anyone in California to accept service of process on its behalf.

6

Straumann is a distinct corporate entity from Rodo. While Straumann holds a 30 percent equity interest in Rodo, the companies have separate management and executives and maintain independent and separate control of finances, sales, and marketing activities. The two companies have separate boards of directors, and the two Straumann executives who served on Rodo's board during the relevant period (one of which was Hemm) are not Straumann directors.

Hemm also submitted uncontroverted evidence in support of his motion to quash. Specifically, Hemm is a citizen of Switzerland, where he resided during the period covered by the complaint. Since 2013, Hemm has served as Straumann's executive vice president of marketing and education but is not a Straumann director. Hemm was a member of Rodo's board of directors from approximately April 2016 until May 2018, during which time he leveraged his industry knowledge to help Rodo develop its product portfolio and commercialization strategy. He also served on the compensation committee. As a representative of Straumann, Hemm participated in discussions with the Rodo board about the transaction each month from September 2016 through December 2016. Hemm has no personal equity interest in Rodo. He has not traveled to California for personal visits, has never lived in California, does not own real property or have any bank account in California, and does not pay taxes in California.

Appellants opposed Hemm's and Straumann's motions to quash. Appellants argued that Hemm had availed himself of the privilege of conducting business activity in California by promoting and negotiating the transaction with Rodo on behalf of Straumann, which gave Straumann significant control over important aspects of Rodo's business and gave rise to appellants' claims. As to Straumann, appellants asserted the company had significantly expanded its role in Rodo's activities "beyond mere stock ownership." They argued that Straumann had purposefully availed itself of the privilege of conducting activities in California by obtaining, through the transaction, two seats on the Rodo board of directors, an option to take a majority interest (51 percent) in Rodo in

7

2020, exclusive rights through the distributorship and license agreement to distribute Rodo products internationally (with some exceptions), and the establishment of a $5 million revolving line of credit for Rodo.

After holding a joint hearing on the motions, the trial court granted both Swiss defendants' motions to quash for lack of personal jurisdiction. It found there was insufficient evidence that Hemm had engaged in fraudulent or tortious conduct expressly aimed at California, which the court reasoned was critical to a showing that his conduct met the applicable standard for personal jurisdiction. Regarding Straumann, the trial court found that while there was "some evidence" that Straumann's entry into an ongoing business relationship with Rodo established minimum contacts with the forum, there was an inadequate connection between that ongoing business relationship and the controversy at issue, which the court concluded "is limited to conduct in connection with the Straumann Transaction and do[es] not arise out of or relate closely enough to the ongoing course of business dealings."

Appellants timely appealed pursuant to Code of Civil Procedure section 904.1, subdivision (a)(3).

## II. DISCUSSION

### A. General Principles of Personal Jurisdiction

California's long-arm statute permits a court to exercise personal jurisdiction on any basis consistent with state or federal constitutional principles. (Code Civ. Proc., § 410.10; *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).) The primary focus of the personal jurisdiction inquiry is the relationship of the defendant to the forum state. (*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (2017) 582 U.S. ___, 137 S.Ct. 1773, 1779 (*Bristol-Myers*).) The "constitutional touchstone" of this inquiry is whether the defendant "purposefully established 'minimum contacts' in the forum State." (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 474 (*Burger King*).)

"Minimum contacts exist where the defendant's conduct in the forum state is such that he should reasonably anticipate being subject to suit there, and it is reasonable and fair to force him to do so." (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 795 (*Hoffman-La Roche*), citing *World–Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 92; *Pavlovich*, *supra*, 29 Cal.4th at p. 269.) To comport with the constitutional requirements of due process, a California court may assert jurisdiction over a nonresident defendant (who has not consented to suit in the forum) *only* if the defendant's minimum contacts with the forum state are "such that the maintenance of the suit 'does not offend the traditional notions of fair play and substantial justice.' " (*Hoffman-La Roche*, at p. 795, quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; see also *Pavlovich*, at p. 268.) The minimum contacts test ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" (*Burger King*, *supra*, 471 U.S. at p. 475) but only "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (*Ibid.*)

Personal jurisdiction under the minimum contacts framework may be either all-purpose (also called " 'general' ") or case-linked (also called " 'specific' "). (*Pavlovich*, *supra*, 29 Cal.4th at pp. 268–269; *Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 294; *Ford Motor Company v. Montana Eighth Judicial District Court* (2021) __ U.S. __, 141 S.Ct. 1017, 1024.) In apparent recognition that the contacts of the nonresident Swiss defendants in this case are not so " 'continuous and systematic' " as to render the defendant " ' "essentially at home in the forum State" ' " and satisfy the requirements of all-purpose jurisdiction (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 139 (*Daimler AG*)), appellants seek only to establish the court's case-linked jurisdiction over Hemm and Straumann.

Case-linked jurisdiction hinges on the " 'relationship among the defendant, the forum, and the litigation.' " (*Daimler AG*, *supra*, 571 U.S. at p. 133; accord *Walden v. Fiore* (2014) 571 U.S. 277, 284 (*Walden*).)  It requires " 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' " (*Bristol-Myers*, *supra*, 582 U.S. ___, 137 S.Ct. at p. 1780.)  Consistent with the constraints of due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." (*Walden*, at p. 284.)

As expressed by the California Supreme Court, a court may exercise case-linked jurisdiction over a nonresident defendant if three requirements are met.  First, the defendant must have purposefully availed himself of the privilege of conducting activities in this state, thereby invoking the benefits and protections of California's laws.  Second, the claim or controversy must relate to or arise out of the defendant's forum-related contacts.  Third, the exercise of jurisdiction must be fair and reasonable and should not offend notions of fair play and substantial justice.  (*Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 446 (*Vons*).)

The case-linked jurisdictional analysis is intensely fact-specific.  (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 109 (*Automobile Antitrust*).)  Indeed, the test for personal jurisdiction " 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' " (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*); see *Burger King*, *supra*, 471 U.S. at pp. 478–479.)

Courts furthermore must exercise " '[g]reat care and reserve . . . when extending our notions of personal jurisdiction into the international field." (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 115 (*Asahi*).)  This principle requires "a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed

10

by minimal interests on the part of the plaintiff or the forum State." (*Ibid.*) Accordingly, "we apply jurisdictional principles with an abundance of caution where the defendant is a foreign corporation." (*Hoffman-La Roche*, *supra*, 130 Cal.App.4th at p. 795.)

### B. Burden of Proof and Standards of Review

When a nonresident defendant challenges a trial court's exercise of personal jurisdiction, the plaintiff bears the initial burden to demonstrate facts justifying the exercise of jurisdiction. (*Vons*, *supra*, 14 Cal.4th at p. 449; *Snowney*, *supra*, 35 Cal.4th at p. 1062.) To meet this burden, a plaintiff must do more than make allegations. A plaintiff must support its allegations with "competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof." (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 110.) If the plaintiff makes this showing by a preponderance of the evidence on the first two requirements (i.e., that the defendant has purposefully availed itself of the forum and the plaintiff's claims relate to or arise out of the defendant's forum-related contacts), the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable. (*Snowney*, at p. 1062; *Automobile Antitrust*, *supra*, at p. 110; see *Burger King*, *supra*, 471 U.S. at p. 477.)

On appeal, we independently review the trial court's legal conclusions as to whether a defendant's contacts with California justify requiring that defendant to mount a defense in the forum. (*Snowney*, *supra*, 35 Cal.4th at p. 1062.) If the facts giving rise to jurisdiction are conflicting, we will not disturb the trial court's express or implied factual determinations where supported by substantial evidence. (*Pavlovich*, *supra*, 29 Cal.4th 273.) "When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons*, *supra*, 14 Cal.4th at p. 449.) "[A] trial court's ruling must be affirmed even if ' "given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the

11

trial court to its conclusion." ' " (*T.A.W. Performance, LLC v. Brembo, S.p.A.* (2020) 53 Cal.App.5th 632, 643 (*Brembo*).)

Here, the parties disagree as to which of the applicable standards governs our review. Appellants contend the underlying facts related to jurisdiction are not in dispute, and the question on appeal is one of law. Respondents maintain, however, that appellants have failed to adhere to the requirements of substantial evidence review, warranting affirmance on that ground alone. They rely on the rule that to challenge the trial court's factual findings, appellants must set forth in their brief "*all* the material evidence on the point and *not merely their own evidence.*" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

Having reviewed the record on appeal and the trial court's jurisdictional findings, we perceive no factual conflicts resolved by the court. As appellants point out, the parties may contest each other's characterization of the facts even though the evidence presented by each side is not in conflict. (See *Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204.) Since the material facts regarding jurisdiction are largely undisputed, "the ultimate question whether jurisdiction is fair and reasonable under all the circumstances . . . is a legal determination warranting independent review." (*Hoffman-La Roche*, *supra*, 130 Cal.App.4th at p. 794.) We also conclude that appellants have not in their briefing on appeal forfeited their claim of error by failing to state material evidence. Therefore, we turn to the merits of the jurisdictional inquiry.

### C. Analysis of Case-Linked Jurisdiction over Straumann

Appellants challenge the trial court's ruling that Straumann is not subject to the personal jurisdiction of the California court by focusing on the first two prongs of the

12

case-linked personal jurisdiction inquiry.[6]  Applying the principles set forth above and for the reasons described more fully below, we conclude that appellants have met their burden to establish that Straumann purposefully availed itself of the benefits of the California forum.  But appellants have not shown the claims at issue relate to or arise from Straumann's contacts in California.

### 1.  Purposeful Availment

At the outset, the parties dispute whether the trial court found that Straumann purposefully availed itself of forum benefits by obtaining the alleged " 'sweetheart' " deal from Rodo.  Appellants contend a finding of purposeful availment is implicit in the trial court's order, which acknowledged "there is some evidence that Straumann contemplated more than just a one-time acquisition of . . . ownership rights, and pursued an ongoing course of business dealing," while respondents maintain there is no implicit finding since the trial court ultimately concluded the transaction between Straumann and Rodo did not afford a sufficient basis to exercise jurisdiction over Straumann.  Because there are no significant conflicts in the evidence, however, as noted *ante*, any findings of the trial court on this point—whether implicit or express—do not constrain our independent review of the record.  (*Hoffman-La Roche*, *supra*, 130 Cal.App.4th at p. 794.)

Respondents describe Straumann's forum contacts as a "quintessential passive minority interest in Rodo," comprising insufficient minimum contacts to support case-linked jurisdiction.  Our review of the record, however, uncovers a more proactive and purposeful availment than respondents acknowledge.  Specifically, the nature of the transaction between Straumann and Rodo, its economic implications for Rodo and

---

**[6]** The trial court did not reach the third prong of the case-linked jurisdiction inquiry in its order granting respondents' motions to quash, and neither party addresses this element in their briefing in this court as to either Straumann or Hemm.

Rodo's shareholders, and the ongoing relationship and mutual obligations established thereby are not consistent with a mere passive minority interest.

During the time that Straumann's Executive Vice-President Hemm served on Rodo's board of directors, Hemm presented Straumann's proposal for the transaction to the Rodo board and helped negotiate the transaction on behalf of Straumann. According to Hemm's verified jurisdictional discovery responses, he was the only person who directly negotiated the transaction with Rodo on behalf of Straumann. The information statement presented to Rodo shareholders for their approval of the transaction disclosed that Hemm, as an interested director given his affiliation with Straumann, "has been leading the Transaction."

Respondents contend it is improper to look to Hemm's role as a Rodo director for purposes of the minimum contacts analysis as to Straumann, since courts must assess "[e]ach defendant's contacts with the forum State . . . individually." (*Calder v. Jones* (1984) 465 U.S. 783, 790 (*Calder*).) Respondents moreover point to the presumption, founded in established principles of corporate law, that directors maintain their appropriate roles when holding positions in both a parent company and subsidiary. (See *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 548–549 (*Sonora Diamond*).)

It is true that the requirements of personal jurisdiction " 'must be met as to each defendant over whom a state court exercises jurisdiction.' " (*Calder*, *supra*, 465 U.S. at p. 790.) It is the *defendant*'s intentional conduct (here, Straumann) directed at the forum that creates the necessary contacts to assert jurisdiction (*Walden*, *supra*, 571 U.S. at p. 286), not the mere fact that an officer of the foreign corporation also exercised director duties in-forum. (See *Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 549, 552.) "Personal jurisdiction must be based on forum-related acts that were personally committed by each nonresident defendant." (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 113.)

14

We therefore do not consider Hemm's dual role as a basis to disregard Rodo's and Straumann's distinct corporate identities or to conflate the separate exercise of jurisdiction over Hemm and Straumann. Rather, because uncontradicted evidence supports appellants' claim that Hemm acted on behalf of Straumann in negotiating the transaction with Rodo, the evidence of Hemm's role in the transaction is relevant in determining whether Straumann purposefully directed its strategic business activities at California. (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 552; see *Burger King*, *supra*, 471 U.S. at p. 472 [defining case-linked jurisdiction inquiry in part by whether "the defendant has 'purposefully directed' his activities at residents of the forum"].) As appellants point out, though occupied by Hemm, the seat on Rodo's board of directors was Straumann's seat by virtue of Straumann's investment in Rodo.

Further, the nature of the transaction between Straumann and Rodo favors a finding that Straumann purposefully availed itself of the benefits of the transaction in California. It is undisputed that by contractual arrangement Straumann increased its equity in Rodo from 12 percent to 30 percent, gained an additional board seat, obtained rights to control Rodo's acquisitions and financing for the next four to six years—including an option exercisable in 2020 to purchase majority shares and take a 51 percent interest in the company, and entered into a distribution agreement with significant implications for Rodo's California business.

The transaction placed Straumann in a position of maintaining an ongoing business relationship with Rodo. Specifically, the transaction infused cash into Rodo through the stock purchase agreement, enabling Rodo "to take substantial steps towards commercialization" of its product following FDA approval, and provides a means through the exclusive distributorship and license agreement for Rodo to generate sales revenue and royalty payments from international sales while holding Straumann to certain "minimum sales milestones" set forth in the distributorship and license agreement.

The exclusive distributorship and license agreement thus creates ongoing obligations for Straumann and Rodo. It requires Straumann to order and purchase specified quantities of Rodo's product every year from 2018 through 2023 and to use commercially reasonable efforts to promote, sell, and distribute the product. And it requires Rodo to provide material and support as requested by Straumann, training to Straumann's sales associates regarding the products, and technical support to Straumann's customers as reasonably requested by Straumann.

Nevertheless, respondents claim the distributorship agreement has "little, if any, connection to California" and does not demonstrate the parties intended to conduct an ongoing business relationship in the United States, much less in California, since the appointment of Straumann as Rodo's exclusive worldwide distributor expressly excludes the United States. But this contention ignores the operational reality of fulfilling the requirements of the distributorship agreement, including the issuance and payment of monthly invoices, purchase orders, and sales and customer support, as well as the ongoing benefit to Straumann of holding exclusive distributorship and license rights for a product undergoing development and commercialization in California.

In addition, several of the transaction agreements (with the exception of the exclusive distributorship and license agreement) contain a California choice of law provision.[7] "Choice-of-law and forum selection clauses, 'standing alone', are not dispositive, and may be discounted where a foreign corporation's other minimum contacts establish jurisdiction in the forum state. However, they may 'reinforce[]' whether or not a foreign corporation has made such 'a deliberate affiliation with the forum state' as to support a conclusion that it should have reasonably foreseen 'possible litigation there.' " (*Brembo, supra,* 53 Cal.App.5th at p. 646, quoting *Burger King,*

---

[7] The exclusive distributorship and license agreement identifies New York laws as governing any dispute thereunder, and New York as the forum for any dispute arbitration.

16

*supra*, 471 U.S. at p. 482.)[8]  Such an affiliation is apparent here, given the option and acquisition rights Straumann obtained through the transaction and the establishment of an ongoing business relationship, as described above.

These ongoing contractual relationships—sought out by Straumann with a California business—support a finding of purposeful availment.  As the California Supreme Court observed in a case involving out-of-state franchisees that contracted with a California business and made substantial and continuing purchases from the California business, "[t]he franchisees purposefully undertook ongoing contractual obligations to the California business, and agreed that any disputes arising out of the contract not only would be governed by California law, but also would be litigated in California."  (*Vons*, *supra*, 14 Cal.4th at pp. 450–451, italics omitted.)  The court concluded that the franchisees thus purposefully availed themselves of the benefits of doing business with California.  (*Id*. at p. 451.)

We recognize that Straumann's position is not identical to that of a franchisee voluntarily subjecting itself to the restrictions and regulations of a California business relationship.  But similar features of purposeful availment are nonetheless present.  Like the franchisees in *Vons*, Straumann elected to reach beyond its home jurisdiction, through its officer Hemm, to negotiate with Rodo, a California corporation, for the purchase of rights in the company, thereby deriving benefits from its contractual affiliation, including future acquisition rights and exclusive international distributorship rights.  (See *Vons*,

_____

[8] We decline to consider appellants' argument that Straumann " 'expressly submitted' " to the jurisdiction of California courts and law,  to the extent they attempt to reargue the trial court's ruling in an earlier order granting Straumann's first motion to quash, filed in response to the original complaint.  In opposing the motions to quash that are currently at issue, appellants expressly disclaimed any intent to re-argue the point that Straumann "explicitly consented" to the jurisdiction of the California courts and so forfeited the right to reassert the argument on appeal.  We nevertheless consider the existence of California choice of law provisions in several of the agreements comprising the transaction as a factor relevant to the question of purposeful availment.

17

*supra*, 14 Cal.4th at pp. 450–451; see also *Burger King*, *supra*, 471 U.S. at pp. 479–480 [finding constitutional, on facts similar to *Vons*, the exercise of personal jurisdiction in Florida of a suit against a Michigan franchisee for breach of the franchise agreement].) In our view, the transaction—proposed by Straumann, negotiated by Hemm on behalf of Straumann, and consummated with significant and continuing benefits and consequences—represents conduct by Straumann that forged a "substantial economic connection" (*Vons*, at p. 451) to California.

Our analysis of the purposeful availment prong as to Straumann also finds support in two cases cited by appellants. In *Checker Motors Corp. v. Superior Court* (1993) 13 Cal.App.4th 1007, 1011 the Court of Appeal upheld the trial court's assertion of jurisdiction over an out-of-state partnership and its general partner based on those entities' solicitation and negotiation of a substantial investment from a California insurance company. The court identified a " 'latticework' of contacts" linking the nonresident defendant entities to California (*id.* at p. 1018), including several comparable to those present in this case. For example, the out-of-state partnership negotiated and executed legal documents with the California company, including a specific contract term "which purported to dispossess California policyholders of their continuing interest in the partnership should the insurance company become insolvent," and made continuing payments in California. (*Ibid.*)

Similarly in *Epic Communications, Inc. v. Richwave Technology, Inc.* (2009) 179 Cal.App.4th 314 (*Epic*), a panel of this court concluded that jurisdiction was proper over a Taiwanese corporation and its founder, whose actions aided the misappropriation of technology under a joint development agreement that the founder had negotiated with the California plaintiff. (*Id.* at pp. 327–329.) The court explained that by coming to California to negotiate the development agreement, executing a nondisclosure agreement in anticipation of the negotiations, and subsequently creating an entity to acquire the rights under the agreement, the founder had purposefully availed herself of the privilege

18

of doing business in the state, making it "eminently foreseeable" that she, and the entity she created, "would be embroiled in any California litigation arising from alleged nonperformance of that agreement." (*Id.* at p. 329.)

The purposeful availment determinations in both *Checker Motors* and *Epic*, as in *Vons* and *Burger King*, were based in part on the nature of the negotiations and resulting contractual agreements between the nonresident entity and its California counterpart, as well as on the future consequences of the agreements for the forum residents. Because Straumann purposefully sought to secure substantial benefits as a result of establishing an ongoing contractual relationship with Rodo in California, creating ongoing consequences for Rodo's California-based business, we conclude that appellants have met their burden to establish purposeful availment by Straumann.

### 2. Forum-Relatedness

Case-linked jurisdiction, as discussed above, requires a showing not only that the defendant has " 'purposefully directed' " its activities at the forum but also that "the litigation results from alleged injuries that 'arise out of or relate to' those activities." (*Burger King*, *supra*, 471 U.S. at p. 472.) There must be "a connection between the forum and the specific claims at issue." (*Bristol-Myers*, *supra*, 582 U.S. ___, 137 S.Ct. at p. 1781.) "If the operative facts of the allegations of the complaint do not relate to the [nonresident]'s contacts in this state, then the cause of action does not arise from that contact such that California courts may exercise specific jurisdiction." (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 116.)

The trial court here found this second condition "too tenuous" to form the basis for personal jurisdiction over Straumann. It reasoned that "the controversy alleged by [appellants] here is limited to conduct in connection with the Straumann Transaction and do[es] not arise out of or relate closely enough to the ongoing course of business dealings." Appellants contend the trial court applied the wrong standard in ruling that their claims did not *relate closely enough*" (italics added) to Straumann's ongoing

19

business dealings, because under California Supreme Court precedent, it is sufficient that "the plaintiff's cause of action 'arises out of or has a substantial 'connection with' " the nonresident's forum-related activity. (*Vons*, *supra*, 14 Cal.4th at p. 448.) They assert that the evidence submitted in opposition to the motions to quash satisfies the requirement of forum-relatedness under both the stricter "arises out of" and the looser "substantial connection" formulations.

Although appellants' recitation of California Supreme Court authority is correct, recent decisions of the United States Supreme Court have cast doubt on the validity of the "substantial connection" formulation. Traditionally, California courts have required only a " 'substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.' " (*Snowney*, *supra*, 35 Cal.4th at p. 1068, quoting *Vons*, *supra*, 14 Cal.4th at p. 456; see *David L. v. Superior Court* (2018) 29 Cal.App.5th 359, 374, fn. 8 (*David L.*).) Under this formulation, " ' "the intensity of forum contacts and the connection of the claim to those contacts are inversely related" ' " such that "the more wide-ranging a defendant's contacts, the more readily a nexus is shown." (*David L.*, at p. 374, fn. 8.) As a result, " '[a] claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction.' " (*Snowey*, at p. 1068.)

However, as our colleagues in the Fourth District Court of Appeal, Division 1, recognized in *David L.*, the United States Supreme Court in *Bristol-Myers* "questioned California's ' "sliding scale approach" ' as 'difficult to square with [its] precedents.' " (*David L.*, *supra*, 29 Cal.App.5th at p. 374, fn. 8, quoting *Bristol-Myers*, *supra*, 582 U.S. ___, 137 S.Ct. 1773, 1781.) *Bristol-Myers* rejected the assertion of case-linked jurisdiction against a nonresident drug company "without identifying any adequate link between the State and the [plaintiffs'] claims." (*Bristol-Myers*, *supra*, 582 U.S. at p. ___, 137 S.Ct. 1773, 1781.) It held the drug company's numerous contacts with California inadequate to support jurisdiction, because the specific claims at issue (which

were brought by nonresident plaintiffs based on alleged injury caused by a prescription drug that had not been prescribed or obtained in California) did not arise from or relate to the defendant's unconnected activities in the forum. (*Ibid.*) *Bristol-Myers* concluded that "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." (*Ibid.*)

The United States Supreme Court's intervention in *Bristol-Myers* suggests that the forum-relatedness requirement may be supplied only by those contacts with the forum that relate to the specific claims at issue. Although *Bristol-Myers* "did not address the *strength* of a causal link required" (*David L.*, *supra*, 29 Cal.App.5th at p. 374, fn. 8), we proceed, for the sake of prudence, under the assumption that a "substantial connection" between the claim and the forum contacts satisfies forum-relatedness only when consistent with a finding that the claim " 'arise[s] out of or relate[s] to' " (*Burger King*, *supra*, 471 U.S. at p. 472) the forum-related activities.

Applying this standard of forum-relatedness, we conclude that appellants have not established the necessary connection between the forum and the claims made in the complaint against Straumann. The causes of action asserted against Straumann include fraud, aiding and abetting breach of fiduciary duty, and statutory violations of the Corporations Code related to the removal of directors, inspection rights, and amendments to the rights and privileges of class shares. The gravamen of these claims, according to appellants, is Straumann's misconduct in procuring the transaction—specifically that Straumann, through Hemm, committed fraud to obtain shareholder consent to the transaction, and that Straumann aided and encouraged Hemm in his breach of fiduciary duties by promoting and negotiating the transaction while Hemm occupied a conflicted role and failed to obtain the best possible terms for Rodo. Appellants contend that inasmuch as Straumann secured the transaction and resulting business relationship with Rodo through these alleged acts of misconduct, the claims against Straumann arise out of or sufficiently relate to its forum activities. We do not agree.

21

As discussed in the above analysis of purposeful availment, uncontradicted evidence establishes that Hemm presented the proposed transaction to Rodo's board and negotiated the transaction on behalf of Straumann. In light of that evidence, we concluded that because the negotiations resulted in a series of agreements comprising the transaction, many of which contained a California choice of law clause, from which Straumann could expect to receive ongoing benefits from an ongoing business and commercial relationship with Rodo—a California company—Straumann had purposefully availed itself of the California forum.

These same facts, however, do not support a conclusion of forum-relatedness, because the claims against Straumann do not arise from and bear little relation to its activities directed at the forum. The evidence of Straumann's forum-related activities centers exclusively on the transaction—its procurement and execution. The causes of action against Straumann for fraud, and for aiding and abetting breach of fiduciary duty by Hemm, do not arise out of or relate to the transaction as it transpired between Straumann and Rodo; instead, the claims arise out of or relate to the alleged misrepresentations to Rodo's shareholders by the defendant directors and to Straumann having enabled Hemm's fiduciary breach of duty in his role as a Rodo director.

More specifically, the fraud cause of action—brought derivatively by appellants on behalf of Rodo—alleges "a series of misrepresentations and/or omissions" based on information presented to Rodo's shareholders to induce their approval of the transaction. However, none of these alleged misrepresentations is connected to evidence of Straumann's forum-related activities. Significantly, the trial court found no evidence in the record of fraudulent or tortious conduct by Hemm. Implicit in this finding, and confirmed by our independent review, is the absence of any evidence of fraudulent or tortious conduct by Straumann, whose contacts with the forum were through Hemm. Therefore, appellants have not presented "competent evidence of jurisdictional facts"

22

(*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 110) tying Straumann's actions to the fraud claim.

Appellants' aiding and abetting cause of action against Straumann centers on Straumann's alleged ratification of Hemm's misconduct—namely, Hemm's alleged failure to act in the best interest of Rodo and to obtain the best possible terms for Rodo before entering into the transaction. But appellants offer no evidence of any kind of actions by Straumann to aid or encourage Hemm's alleged breach of fiduciary duty, nor, as we discuss further below, do they submit competent evidence to support the underlying breach of fiduciary duty claim against Hemm. The plaintiff's burden "to demonstrate by a preponderance of the evidence that all necessary jurisdictional criteria are met . . . must be met by competent evidence in affidavits and authenticated documentary evidence." (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1233–1234 (*Ziller*).) Because it lacks competent supporting evidence, the aiding and abetting claim falls short of satisfying the requirement for forum-relatedness.

To illustrate, we consider a similar claim in *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103 (*Taylor-Rush*), which the trial court relied on here in its order granting the motions to quash. In *Taylor-Rush*, the court reversed the trial court's order quashing service of summons as to two nonresident corporate officers charged with fraud and other misconduct in their acquisition of the plaintiff's company. (*Id.* at pp. 108, 114.) The court reasoned that the two officers made fraudulent misrepresentations and nondisclosures directed at the plaintiff in California. (*Id.* at p. 114.) In contrast, the court affirmed orders quashing service of summons of several other nonresident corporate officers because there was "no evidence [] they participated in or directed any tortious act or omission either within or without California." (*Ibid.*) In drawing this distinction, the court explained that despite allegations that the other nonresident officers conspired with

23

the offending officers, "the bland allegation of conspiracy without a prima facie showing of its existence is insufficient to establish personal jurisdiction." (*Ibid.*)

Similarly, the Court of Appeal in *Automobile Antitrust* examined claims against three foreign automobile manufacturers based on an alleged price-fixing conspiracy. (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 116.) After determining that the manufacturers purposefully availed themselves of the forum by placing their vehicles into the stream of commerce for sale in California (*ibid.*), the court deemed it appropriate under the second prong "to require [the] plaintiffs to demonstrate some evidence tending to connect each parent manufacturer to the alleged conspiracy." (*Id.* at p. 118.) The court recognized the challenge posed to a plaintiff in such circumstances, where the "facts relevant to jurisdiction may also bear on the merits of the case." (*Ibid.*) The court reiterated, however, that the "evidence need not be strong or conclusive" and need only allow the court to draw a conclusion regarding each defendant's involvement in the alleged conspiracy. (*Id.* at p. 119.) Because the plaintiffs were "unable to show any evidence of an act furthering the alleged conspiracy committed by any of the[] three parent manufacturers—neither an act occurring in this state nor one that occurred outside the state that was directed toward California consumers" (*id.* at p. 118, italics omitted), the court held that California could not assert jurisdiction over the three foreign defendants consistent with federal due process and California's long-arm statute. (*Id.* at p. 119.)

As in *Taylor-Rush* and *Automobile Antitrust*, the plain allegation that Straumann aided and abetted Hemm in his alleged breaches of fiduciary duty is insufficient to establish personal jurisdiction without some competent evidence related to Straumann's forum-related conduct. Appellants have failed to offer any evidence that the conduct Straumann directed at California, in proposing and negotiating a transaction that would establish an ongoing business relationship and an option for a future acquisition, is connected with the specific charge of aiding and abetting an alleged breach by Hemm.

24

(See *Taylor-Rush*, *supra*, 217 Cal.App.3d at p. 114.) The claims against Straumann under the Corporations Code appear even further removed from any forum-related conduct by the Swiss company, whose efforts toward procuring the transaction bear no discernible connection to the alleged statutory violations.[9]

In sum, the evidence submitted in relation to the motions to quash demonstrates that the " 'affiliation' " (*Bristol-Myers*, *supra*, 582 U.S. at p. ___, 137 S.Ct. 1773, 1781) between California and Straumann is contractual, based on the agreements with Rodo. However, the claims in the complaint against Straumann, sounding in tort, do not arise from, or relate to the contractual relationship, but to alleged misconduct that bears no particular affiliation to the forum.[10] Moreover, those claims are unsupported by the jurisdictional evidence. Therefore, we decide that the evidence that Straumann directed activities at California in relation to the transaction does not establish the required "connection between the forum and the specific claims at issue." (*Ibid.*) Furthermore, as appellants have not met their initial burden in the jurisdictional analysis, we need not address whether the exercise of jurisdiction would be fair and reasonable, consistent with notions of fair play and substantial justice. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Vons*, *supra*, 14 Cal.4th at p. 446.)

---

[9] The statutory causes of action allege the following violations of the Corporations Code as to the defendants, including Straumann: 1) purporting to remove Rivelli from the board and to elect Guillaume Danniellot in his place, without the written consent of all shares entitled to vote (Corp. Code, § 603, subd. (d)); 2) refusing, without justification, to turn over Rodo's company information, subject to a reasonable request by Rivelli, as both an investor and director (*id.*, §§ 213, 1600-1605); and 3) misrepresenting to Rodo's shareholders that approval of the transaction only required the written consent of certain classes of stock and failing to require approval by the outstanding shares of the Series A class in a separate vote (*id.*, § 903).

[10] We observe that the complaint's causes of action for breach of contract are not alleged against either Straumann or Hemm.

*D. Analysis of Case-Linked Jurisdiction over Hemm*

Appellants also challenge the trial court's ruling as to Hemm. We apply the same principles in evaluating whether appellants met their burden, with competent evidence, to satisfy the requirements of case-linked jurisdiction as to Hemm. While there is some overlap in the evidence relevant to Straumann and Hemm, "[e]ach defendant's contacts with the forum State must be assessed individually." (*Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 781, fn. 13; see also *Walden*, *supra*, 571 U.S. at p. 286.) Focusing on the nature of Hemm's affiliation with California, we conclude that appellants' showing falls short of establishing personal jurisdiction over him.

Appellants contend the trial court erroneously construed the claims against Hemm as based solely on allegations of fraudulent misrepresentations and nondisclosures and overlooked or ignored the evidence in the record of Hemm's tortious conduct. They argue, moreover, that a plaintiff need not prove the truth of the allegations constituting the causes of action but need only " 'present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." ' " (*Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 228.) Appellants assert that the evidence they presented satisfies this showing because it establishes that Hemm was leading the transaction with Straumann while serving in the conflicted role as both director of Rodo, and officer and agent of Straumann; that even if he recused himself from the vote on the transaction, he participated in the Rodo board's discussions and negotiations regarding the transaction; and that he breached his fiduciary duties by failing to obtain the best deal for Rodo's shareholders, by attempting to dissuade the Rodo board from considering deals with other investors, and by gaining access to confidential Rodo information, through his board position, about other potential investors or acquirers, giving Straumann an unfair advantage.

26

1. Purposeful Availment

Here, Hemm's "lead" role in presenting and negotiating the transaction to the Rodo board—conduct we imputed to Straumann given the uncontradicted evidence that Hemm was at those times acting on behalf of Straumann—is not in dispute. Hemm acknowledges having participated, as a representative of Straumann, in discussions with the Rodo board about the transaction each month from September 2016 through December 2016. He also states that as a Rodo director with experience in the dental implant field, his role was to provide insight regarding Rodo's product portfolio and commercialization strategy both in and outside the United States. Further, Hemm signed the transaction agreements on behalf of Straumann, along with Straumann's general counsel.

The evidence therefore shows that Hemm's duties as a Rodo director placed him in contact with the forum for approximately two years while he served on the board, during which time he directed his efforts toward helping the privately-held, California corporation develop and commercialize its product and oversee employee compensation. The evidence also shows that Hemm was instrumental to the transaction and assisted Straumann in establishing the ongoing relationship with Rodo. These contacts demonstrate availment, inasmuch as Hemm purposefully availed himself of the privilege of conducting activities in this state through his directorship at Rodo, such that he might expect—particularly by virtue of his conduct in leading the transaction on behalf of Straumann—to be subject to the court's jurisdiction based on his active forum contacts. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) Hemm's status as an executive of Straumann does not insulate him from jurisdiction, given that each defendant's contacts must be assessed individually. (*Calder*, *supra*, 465 U.S. at p. 790; see also *Epic*, *supra*, 179 Cal.App.4th at p. 329.)

## 2. Forum-Relatedness

On the other hand, appellants have offered no evidence of fraudulent or tortious misconduct, or of any actual wrongdoing by Hemm, directed at the forum. As the United States Supreme Court has made clear, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." (*Walden*, *supra*, 571 U.S. at p. 286.) *Taylor-Rush*, discussed *ante*, was decided well before *Walden* but effectively applied this same principle in rejecting the assertion of personal jurisdiction over certain corporate directors who allegedly induced the plaintiff's execution of agreements through a series of fraudulent misrepresentations and nondisclosures. (*Taylor-Rush*, *supra*, 217 Cal.App.3d at pp. 111, 112–113.)

The court in *Taylor-Rush* determined, based on the evidence available as to each individual defendant, that the California court had personal jurisdiction over two defendants who had admitted to directing fraudulent misrepresentations and nondisclosures at the plaintiff to induce her cooperation in executing the agreements at issue. (*Taylor-Rush*, *supra*, 217 Cal.App.3d at p. 114.) However, the California court could not exercise personal jurisdiction over the remaining directors based on their alleged conspiratorial participation in wrongdoing, because there was no evidence they had engaged in tortious conduct. (*Ibid.*)

Appellants assert they have submitted evidence of Hemm's tortious conduct, but the record demonstrates otherwise. For example, appellants point to Hemm's conflicted role while leading the transaction between Straumann and Rodo and argue that he did not abstain from Rodo board discussions about the Straumann transaction. But critically for purposes of the fraud and breach of fiduciary duty causes of action, Hemm disclosed his role to the board and did not vote on the transaction or participate in the consideration of any alternative purchasers. Moreover, there is no evidence the Rodo shareholders were misled about Hemm's role in the transaction. And as we discuss below, appellants' effort

to establish that Hemm tried to dissuade the Rodo board from considering deals with other investors is supported only by a single, vague assertion in Rivelli's declaration, which we decide is insufficient to support the exercise of personal jurisdiction.

The information statement presented to Rodo's shareholders states that Hemm is an executive vice president at Straumann, describes Straumann's interests in the transaction, and explains that Hemm "is an interested director in the Transaction under [California law] given his affiliation with Straumann, which has been fully disclosed to the Board." The information statement explains that such interests might have affected the directors' decision to support or approve the transaction, and "[a]s a result of these interests . . . may be more likely to recommend that you approve the Transaction than if they did not have these interests."

Because Hemm has no personal equity interest in Rodo, and the nature of the conflict based on his executive role at Straumann was disclosed to the board and to Rodo's shareholders, it is unclear how the misrepresentations asserted in the fraud cause of action arise from or are related to either Hemm's general activities on the Rodo board or his role in leading the transaction on behalf of Straumann. Appellants' briefing in this court does not provide any detail (or cite any evidence) supporting the claims of fraud against Hemm. Our conclusion finds further support in the undisputed fact, based on Hemm's verified declaration in support of the motion to quash, that he did not participate in drafting the information statement sent to Rodo's shareholders regarding the transaction.

Hemm's recusal from participating in any vote on the transaction and from drafting the information statement that presented and summarized the benefits, risks, and consequences of the transaction to shareholders, also undercuts any link between Hemm's forum-related conduct and the harm alleged in the statutory causes of action, summarized above (see *ante*, fn. 7). Those causes of action relate to the requirements for shareholder approval of the transaction, and to Rodo's alleged refusal to respond to a

29

proper inspection request by a director; they neither arise out of nor relate to Hemm's activities on the Rodo board.

Finally, as to the breach of fiduciary duty cause of action asserted against Hemm, appellants have not presented any evidence of conduct by Hemm, directed at the forum, that would suffice to establish the required " ' "relationship among the defendant, the forum, and the litigation." ' " (*Walden*, *supra*, 571 U.S. at p. 284.) The allegation that Hemm failed to obtain the best deal for shareholders, and that his access to confidential information about potential investors or acquirors gave Straumann an unfair advantage, requires "some evidence" (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 118) to connect Hemm to the purported misconduct directed toward the forum. The only evidence submitted in support of the alleged misconduct is one sentence from Rivelli's verified declaration, in which he asserts that "in several instances, Mr. Hemm attempted to dissuade the board from considering deals with other investors." Rivelli's declaration provides no other information on this point.

This vague assertion, without more, by an individual privy to the board's deliberations and presumably able to provide a firsthand account of Hemm's conduct at board meetings, is insufficient to establish the necessary jurisdictional facts by a preponderance of the evidence. It is well-settled that "[d]eclarations cannot be mere vague assertions of ultimate facts, but must offer specific evidentiary facts permitting a court to form an independent conclusion on the issue of jurisdiction." (*Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 110; accord *Ziller*, *supra*, 206 Cal.App.3d at p. 1233.) Even verified "[d]eclarations are insufficient to support the assertions for which they are offered if they consist primarily of vague assertions of ultimate facts rather than specific evidentiary facts permitting a court to form an independent conclusion on the issue." (*Jewish Defense Organization, Inc. v. Superior Court* (1999) 72 Cal.App.4th 1045, 1055.) Rivelli's declaration offers nothing more than the limited assertion that Hemm "attempted to dissuade the board" from considering other deals.

30

This statement, lacking both foundation and detail, is "inadequate to support the legal and factual conclusions for which [it is] offered." (*Id.* at p. 1056.)

We are mindful that courts must use " '[g]reat care and reserve . . . when extending our notions of personal jurisdiction into the international field." (*Asahi*, *supra*, 480 U.S. at p. 115.) Even if for the sake of argument we treat Rivelli's statement that Hemm worked to dissuade the Rodo board from other offers as an undisputed fact, there is no evidence about any alternative offers from which we might infer that Hemm violated any fiduciary duty based solely on this conduct. Without more, the evidence supplied by Rivelli's declaration is insufficient to permit this court to conclude that Hemm's participation on the Rodo board, including his promotion of the transaction on behalf of Straumann, suffices to justify the assertion of personal jurisdiction over him.

### E. Conclusion

Having carefully reviewed the record presented of Hemm's contacts with California through his service on the Rodo board, and the nature of Straumann's transaction with Rodo, we conclude that in each instance appellants have not demonstrated the required relatedness between the California forum, Hemm or Straumann, and the specific claims at issue, as would be required to permit the constitutional exercise of case-linked jurisdiction. The trial court therefore did not err in granting Hemm's and Straumann's motions to quash.

## III. DISPOSITION

The trial court's order granting respondents' motions to quash service of summons is affirmed. Respondents Hemm and Straumann are entitled to their costs on appeal.

_____
                   Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H046878**
***Rivelli et al. v. Hemm et al.***

| Trial Court: | Santa Clara County Superior Court No. 18CV326785 |
|---|---|
| Trial Judge: | Hon. Peter H. Kirwan |
| Counsel for Plaintiffs/Appellants Patrick J. Rivelli and Pinecroft Ventures, LLC: | Robert A. Goodin Keith E. Johnson Goodin, MacBride, Squeri & Day, LLP |
| Counsel for Defendants/Respondents Frank Hemm and Institut Straumann AG: | René Pierre Tatro Juliet A. Markowitz Tatro Tekosky Sadwick, LLP |

**H046878**
*Rivelli et al. v. Hemm et al.*