[No. A043187. First Dist., Div. Five. Jan. 12, 1990.]

CHERYL TAYLOR-RUSH Plaintiff and Appellant, v.
MULTITECH CORPORATION et al., Defendants and Respondents.

**COUNSEL**

William R. Benz for Plaintiff and Appellant.

Daniel Berko for Defendants and Respondents.

**OPINION**

**HANING, J.**—Plaintiff/appellant Cheryl Taylor-Rush appeals an order quashing service of summons on six nonresident corporate officers and

directors[1] in her action against them and a nonresident corporation for breach of contract, fraud, conspiracy to defraud and other alleged wrongs. At issue is the applicability of the so-called "fiduciary shield doctrine."

## FACTS

Appellant's complaint charged respondents with breach of contract, fraud, breach of a written employment contract, breach of an agreement to convey stock, conspiracy to defraud, conspiracy to induce a breach of contract, and fraudulent transfer of securities. Although her complaint alleged that at all times the individual respondents were acting within the course and scope of their agency and employment by an out-of-state corporation, appellant sought jurisdiction over each respondent based on their individual tortious conduct toward her.

Respondents appeared specially and moved to quash service on the grounds they were protected by the "fiduciary shield doctrine"—that their activities within California and any other contacts with California in relation to appellant's complaint were in performance of their duties as corporate officers or directors.

Appellant's declaration in opposition to the motion to quash includes the following: In 1982 she was approached in California by respondents Messinger and Cohen regarding their purchase of Bio-Health Laboratories, Inc. (Bio-Health), a California corporation she owned. They proposed that their company, Multitech Corporation (Multitech), a Delaware corporation, acquire Bio-Health through a stock exchange and that appellant become employed by Multitech. In conjunction with the proposal, respondents Donald Messinger and Lester Cohen made numerous representations regarding Multitech's financial status, programs, endorsements and future plans that appellant relied upon in entering into a buy/sell agreement and an employment agreement with Multitech. Both agreements were signed in California in March 1982; Cohen signed the buy/sell agreement as Multitech's vice-president, and Messinger signed the employment agreement as Multitech's president. Appellant contends the representations made by Messinger and Cohen were false, that respondents did not disclose that Messinger was under investigation by the Securities and Exchange Commission, and that had she known such representations were false, she would not have entered into the aforementioned agreements nor conveyed her stock to Multitech.

---

[1] Respondents include David Kripke, M.D., David Katz, M.D., Walter Carow, Lester Cohen, Donald Messinger, and Michael Antonelle, M.D. The defendant corporation and two individual defendants have not objected to jurisdiction, have appeared in the action, and are not parties to this appeal.

In 1983 Multitech changed its name to TotalMed Associates, Inc. (To-talMed).[2] Appellant's declaration further alleges that in January 1983 she met with respondent Walter Carow in New York, who made the same representations as Messinger and Cohen had made in California. By April 1983 TotalMed had not paid appellant the amount due her under the buy/sell and employment agreements, and did not have sufficient capital to pay her. On April 23, 1983, the parties resolved this problem by entering into what they refer to as a "Settlement Agreement."

The settlement agreement provided, in part, that TotalMed would pay certain monies immediately and would pay the remainder upon the closing of an underwriting that would enable it to go public. The settlement agreement specified that it was to be interpreted in accordance with California law. It was signed by a defendant who is not contesting jurisdiction, and the record does not disclose where it was signed. In August 1983 the employment agreement and the settlement agreement were amended. The amendments were also signed by a noncontesting defendant, and there is no evidence concerning the negotiations of the amendments or where they were signed. Sometime thereafter appellant discovered that TotalMed was merely a "shell holding company." In September 1983 TotalMed became a public corporation.

In summary, appellant contends she was induced to enter into the buy/sell and employment agreements by the fraudulent misrepresentations of Messinger and Cohen; she contends she was induced to enter into the "Settlement Agreement" and the amendments by the fraudulent misrepresentations of Messinger, Cohen and Carow. As a consequence, she alleges, her shares of TotalMed stock are essentially worthless, she has not received remuneration for her efforts expended under the employment agreement, and has incurred financial responsibility and liability for Bio-Health's debts.

## DISCUSSION

### I.

Cohen contends that service of summons was improper because he was not personally served pursuant to Code of Civil Procedure section 417.20, subdivision (a). We agree and affirm the trial court's order quashing service on him.

" ' "An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere

---

[2] The parties refer to Multitech and TotalMed as "TotalMed."

with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. ■ In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review." [Citations.] When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.' [Citations.]" (*Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 519, fn. 1 [138 Cal.Rptr. 586, 564 P.2d 353].)

The record contains a return receipt addressed to Cohen at "425 East 58th Street, *Apt. 4-D,* New York, N.Y. 10022" (italics added) and is signed by two persons other than Cohen. One signature is in the box marked "Addressee" and the other signature is in the box marked "Agent." There is no evidence who these signators are or their relationship, if any, to Cohen. Cohen's declaration states that he has never been served with the summons and complaint or the amended complaint. Although the street address reflected on the return receipt is correct, he resides in *apartment 15A,* not apartment 4-D. He has not authorized anyone, other than his wife, to accept mail on his behalf, and does not know who signed the return receipt.

Code of Civil Procedure section 417.20 provides, in relevant part: "Proof that a summons was served on a person outside this state shall be made: [¶] (a) If served in a manner specified in a statute of this state, as prescribed by Section 417.10, and if service is made by mail pursuant to Section 415.40, proof of service shall include evidence satisfactory to the court establishing actual delivery to the person to be served, by a signed return receipt or other evidence; . . ." ■ The plaintiff has the burden of demonstrating by a preponderance of the evidence that all jurisdictional criteria are met. (*Ziller Electronics Lab GmbH* v. *Superior Court* (1988) 206 Cal.App.3d 1222, 1232-1233 [254 Cal.Rptr. 410].)

■ While a return receipt signed by someone authorized by a nonresident defendant to sign for his mail is sufficient, the plaintiff must provide separate evidence establishing the authority of the person who signed the return receipt on defendant's behalf. (*Neadeau* v. *Foster* (1982) 129 Cal.App.3d 234, 237-238 [180 Cal.Rptr. 806].) Other evidence of actual

receipt may also validate the otherwise defective service, such as where a defendant's attorney acknowledges the defendant's receipt of the summons (*In re Marriage of Tusinger* (1985) 170 Cal.App.3d 80, 82-83 [215 Cal.Rptr. 838].) Here, however, no such evidence has been presented.

Appellant argues that Cohen obviously received both the complaint and its amendment since he refers in his declaration to matters "alleged in the first amended complaint." She also contends other pleadings and motion papers were similarly addressed and never returned. Such contentions are without merit. ■ A defendant is under no duty to respond to a defectively served summons. The notice requirement is not satisfied by actual knowledge of the action without service conforming to the statutory requirements, which are to be strictly construed. (*Kappel* v. *Bartlett* (1988) 200 Cal.App.3d 1457, 1466-1467 [246 Cal.Rptr. 815].) ■ Due to the defective service on Cohen, no jurisdiction was acquired over him.

## II.

### A.

■ Appellant contends the court erred in ruling there was no basis for personal jurisdiction over the remaining individual respondents. Respondents' declarations state the following: They are nonresidents and nondomiciliaries of California. At all times and regarding all dealings with appellant or Bio-Health, respondents acted exclusively as directors or officers of TotalMed. Carow, respondents Michael Antonelle and David Katz were corporate directors, respondent David Kripke was an officer and director and Messinger was its founder and president from February 1981 until February 1983. In April 1983 Messinger became a paid consultant to the corporation.

Messinger admits coming to California to speak with appellant regarding the "negotiations and eventual contract," but states that those contacts were exclusively in his capacity as TotalMed's president. Carow's declaration is contradictory. He states that, "I have never had a direct conversation with [appellant]," but also that he met her at a shareholders' meeting in New York, and that any dealings he had with her or with Bio-Health were in his capacity as director of TotalMed. While he states he was not "involved in negotiations leading to the *agreement* with [appellant]" (italics added), he does not identify the agreement to which he refers. Assuming he means the buy/sell or employment agreements, he does *not* deny appellant's allegations of misrepresentations inducing her to sign the settlement agreement.

Kripke states he had no involvement in precontract negotiations and did not know of appellant until the public offering in September 1983. He made

two trips to California on behalf of TotalMed in 1984, after all relevant agreements were executed. Antonelle played no part in any negotiations with appellant. He made one trip to California on behalf of TotalMed, but the record does not disclose the date of such trip. Katz had no participation in discussions leading to appellant's involvement with TotalMed, was not involved in precontract negotiations, and did not enter California during any relevant period.

■ When jurisdiction is challenged by a nonresident defendant, the burden of proof is on the plaintiff to demonstrate that sufficient "minimum contacts" exist between the defendant and the forum state to justify imposition of personal jurisdiction. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].)

The principles applicable to our review are well settled. California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) ■ The statute "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. [Citations.]" (*Sibley* v. *Superior Court, supra*, 16 Cal.3d at p. 445.) A state may constitutionally exercise personal jurisdiction over a nonresident as long as he or she has "minimum contacts" with that forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].)

■ "The 'substantial connection' [citations] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* [Citations.]" (*Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 112 [94 L.Ed.2d 92, 104, 107 S.Ct. 1026].) A defendant's physical presence in the state is not required, as long as his or her efforts were " 'purposely directed' " toward residents of that state. (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 476 [85 L.Ed.2d 528, 543, 105 S.Ct. 2174]; *St. Joe Paper Co.* v. *Superior Court* (1981) 120 Cal.App.3d 991, 997 [175 Cal.Rptr. 94].) Thus, personal jurisdiction may be exercised over a defendant who has caused an effect in the forum state by an act or omission occurring elsewhere. (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223-224 [2 L.Ed.2d 223, 226, 78 S.Ct. 199]; *Sibley* v. *Superior Court, supra*, 16 Cal.3d at pp. 445-446; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].)

Appellant primarily bases her claim of jurisdiction over the individual respondents on their wilfull and conspiratorial acts and omissions—that

their fraudulent misrepresentations and nondisclosures induced her execution of the buy/sell, employment and settlement agreements. "A state has a special interest in exercising jurisdiction over those who commit tortious acts within its territory. Therefore, it is reasonable that a state should exercise jurisdiction over those who commit or cause to be committed in the state what is claimed to be a tortious act." (*Kaiser Aetna v. Deal* (1978) 86 Cal.App.3d 896, 901 [150 Cal.Rptr. 615].) ■ Jurisdiction is proper over a nonresident defendant who, while personally present in California, makes representations or nondisclosures to the plaintiff which constitute the gravamen of the action. (*Ibid.*) "If a defendant commits an act or omission outside the forum state *with the intent* to cause a tortious effect within the state, the state may exercise jurisdiction over the defendant as to any cause of action arising from the effects. The intent to cause tortious injury within the state where the tort actually occurs is generally a sufficient basis, without more, for the exercise of in personam jurisdiction. 'The act may have been done with the intention of causing effects in the state. If so, the state may exercise the same judicial jurisdiction over the actor, or over the one who caused the act to be done, as to causes of action arising from these effects as it could have exercised if these effects had resulted from an act done within its territory.' [Citation.]" (*Id.*, at p. 902.)

■ Corporate officers and directors cannot ordinarily be held personally liable for the acts or obligations of their corporation. However, they may become liable if they directly authorize or actively participate in wrongful or tortious conduct. (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 503-504 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447]; see also *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 785 [157 Cal.Rptr. 392, 598 P.2d 45].) Appellant also contends respondents are individually liable under Corporations Code sections 25401, 25504, and 25504.1 for the fraudulent acquisition of securities in California. She alleges that the aforementioned intentional misrepresentations and nondisclosures by respondents induced her to sell her stock in Bio-Health as part of the buy/sell agreement.[3]

---

[3]Corporations Code section 25401 makes it unlawful to buy a security in California by means of false or misleading statements. Corporations Code section 25504 provides, in relevant part: "Every person who directly or indirectly controls a person liable under Section 25501 . . . , every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." Corporations Code section 25504.1 provides, in pertinent part: "Any person who materially assists in any violation of Section . . . 25401 . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."

In the instant case appellant has made a compelling showing that, *while in California,* Messinger made fraudulent misrepresentations and non-disclosures which induced her to execute the buy/sell, employment and settlement agreements. Messinger's declaration does *not* deny such misrepresentations and nondisclosures, but instead states that any and all dealings with appellant and Bio-Health were carried out exclusively in his capacity as an officer of TotalMed. There is no question that the minimum contacts test was met and personal jurisdiction over him was acquired by virtue of his tortious acts within California purposely directed at appellant.

Appellant also established that Carow made fraudulent misrepresentations and nondisclosures during their meeting in New York which led to her execution of the settlement agreement. Like Messinger, Carow does *not* deny the fraudulent conduct, but states that he acted exclusively in his capacity as director of TotalMed. While Carow's contacts with California were not as extensive as those of Messinger, in that he only met with appellant in New York, his alleged tortious conduct outside California was purposely directed at appellant in California and had a tortious effect here. Thus, sufficient minimum contacts were established for personal jurisdiction.

Appellant's evidence as to Kripke, Antonelle, and Katz is insufficient to establish the minimum contacts with California required for jurisdiction over them. There is no evidence that they participated in or directed any tortious act or omission either within or without California. While appellant's complaint alleges they conspired with Messinger, Cohen and Carow, her declaration does not mention them, and their declarations clearly state they did not participate in any of the negotiations during which she claims she was defrauded. Moreover she has not presented evidence of their liability under the Corporations Code. Although the acts of a coconspirator within California may give rise to jurisdiction over a coconspirator in another state, the bland allegation of conspiracy without a prima facie showing of its existence is insufficient to establish personal jurisdiction. (See *Sibley* v. *Superior Court, supra,* 16 Cal.3d at p. 448; *Kaiser Aetna* v. *Deal, supra,* 86 Cal.App.3d at p. 901.)

### B.

Respondents contend that even if minimum contacts were established, the "fiduciary shield doctrine" insulates them from personal jurisdiction because any tortious activities were carried out exclusively within their capacities as corporate officers or directors. The trial court granted respondents' motion to quash on the grounds they were acting within the course and scope of their employment as officers and directors of the corporation

and such conduct was not sufficient to confer personal jurisdiction over them. Appellant relies on *Calder* v. *Jones* (1984) 465 U.S. 783 [79 L.Ed.2d 804, 104 S.Ct. 1482] and contends the "fiduciary shield doctrine" does not apply under these circumstances.

 The "fiduciary shield doctrine" provides that nonresident individuals should not be subject to jurisdiction if their conduct in the forum state was solely in a corporate capacity. (*Bulova Watch Co., Inc.* v. *K. Hattori & Co., Ltd.* (E.D.N.Y. 1981) 508 F.Supp. 1322, 1347; see generally, Note, *Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield* (1986) 38 Stan.L.Rev. 813; Sponsler, *Jurisdiction Over the Corporate Agent: The Fiduciary Shield* (1978) 35 Wash. & Lee L.Rev. 349.) The rationale of the doctrine is "the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." (*Marine Midland Bank, N.A.* v. *Miller* (2d Cir. 1981) 664 F.2d 899, 902, fn. omitted.) "This doctrine of 'fiduciary shield,' . . . emerged 'with little notice and with no critical examination' as a novel principle by way of dicta . . . ." (*Columbia Briargate Co.* v. *First Nat. Bank* (4th Cir. 1983) 713 F.2d 1052, 1055.) The doctrine arose in a federal diversity case interpreting New York law; however, it was never accepted by, and has been rejected by, New York's highest court. It has been applied inconsistently in several state and federal courts.[4]

---

[4] "The phrase 'fiduciary shield doctrine' was first used by the United States Court of Appeals in *United States* v. *Montreal Trust Co.,* 358 F.2d 239, *cert. denied* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440, a diversity case in which the Second Circuit applied New York's jurisdictional rules. In doing so the court construed our long-arm statute to require the application of the fiduciary shield doctrine based upon its reading of *Boas & Assocs.* v. *Vernier,* 22 A.D.2d 561, 257 N.Y.S.2d 487). In *Boas,* however, plaintiff was suing on a contract and the Appellate Division merely found that, as a matter of substantive law, no claim could be asserted against an individual nonresident defendant whose only contact with New York was his execution of a contract here on behalf of his corporate employer. That was so, the *Boas* court noted, because one who executes a contract on behalf of a corporation without also signing it in his individual capacity is not personally obligated under the agreement (*id.,* at 563, 257 N.Y.S.2d 487, citing *Savoy Record Co.* v. *Cardinal Export Corp.,* 15 N.Y.2d 1, 254 N.Y.S.2d 521, 203 N.E.2d 206; *Salzman Sign Co.* v. *Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 176 N.E.2d 74). The *Boas* court did not address whether the defendant was amenable to jurisdiction in the New York courts and thus it provides no basis for development of the jurisdictional doctrine the Second Circuit attributed to it. Some courts have also found a suggestion in *Yardis Corp.* v. *Cirami,* 76 Misc.2d 793, 351 N.Y.S.2d 586, that the fiduciary shield doctrine had been adopted in this State. *Yardis* did not involve interpretation of New York's long-arm statute, however; it rested on constitutional principles.

"The *Boas* and *Yardis* decisions appear to supply the only basis for Federal court determinations that the fiduciary shield doctrine has been accepted in New York but, remarkably, application of the doctrine has proliferated and it has been accepted by several Federal courts and by some Departments of the Appellate Division." (*Kreutter* v. *McFadden Oil Corp.* (1988) 71 N.Y.2d 460, 468-469 [527 N.Y.S.2d 195, 522 N.E.2d 40].)

In *Kreutter* v. *McFadden Oil Corp., supra,* 71 N.Y.2d 460, New York's high court reasoned that if the forum state's long-arm statute was designed, as is California's (Code Civ. Proc., § 410.10), to provide personal jurisdiction to the fullest extent constitutionally permissible, the "fiduciary shield doctrine" is inconsistent with such legislative intent. (*Id.,* at p. 472.) "The equitable concerns which motivated development of the doctrine are amply protected by constitutional due process requisites which guarantee that jurisdiction over a nonresident will be sustained only when the demand of his presence is reasonable and consistent with notions of fair play and substantial justice." (*Id.,* at p. 470, citations and internal quotation marks omitted.)

In *Calder* v. *Jones, supra,* 465 U.S. 783, the United States Supreme Court affirmed the exercise of jurisdiction by a California court over the president/editor of the nonresident National Enquirer Corporation and the reporter/author of one of its articles, in a libel action. (*Id.,* at pp. 785-786 [79 L.Ed.2d at pp. 809-810].) The *Calder* defendants contended they had no responsibility for circulation of the article in California, and that as an author and an editor, they had no direct economic stake in their employer's sales and no control over its marketing activity.

*Calder* regarded both the president/editor and the author as "employees," and stated: "[Defendants] are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. [Citation.]" (*Calder* v. *Jones, supra,* 465 U.S. at p. 790 [79 L.Ed.2d at p. 813].) The defendants characterized their situation as that of a hypothetical welder employed outside California who works on a boiler which later explodes in California. They argued that the welder should not be liable because he has no control over and derives no benefit from his employer's sales. The Supreme Court rejected the argument, reminding defendants they were not charged with "mere untargeted negligence," but with intentional and allegedly tortious activity expressly aimed at California. Moreover, they "knew that the brunt of that injury would be felt by respondent in [California]" where the plaintiff lived and worked. (*Id.,* at pp. 789-790 [79 L.Ed.2d at p. 812].) Thus, the court concluded the defendants were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." (*Id.,* at p. 790 [79 L.Ed.2d at p. 813].)

In *Keeton* v. *Hustler Magazine, Inc.* (1984) 465 U.S. 770 [79 L.Ed.2d 790, 104 S.Ct. 1473], decided the same day, the Supreme Court was even more emphatic in its rejection of automatic jurisdictional immunity for corporate

agents. "In addition to Hustler Magazine, Inc., Larry Flint, the publisher, editor, and owner of the magazine, and L.F.P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not, of course, follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants. In *Calder* v. *Jones*, . . . , we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . . [Citations.] Each defendant's contacts with the forum State must be assessed individually. [Citation.]" (*Id.,* at p. 782, fn. 13 [79 L.Ed.2d at p. 802].) Since the lower court found that jurisdiction could not be obtained over Hustler Magazine, Inc., it did not address the propriety of jurisdiction over the other defendants.

In *Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703 [215 Cal.Rptr. 442], relied on by respondents, the Court of Appeal upheld the trial court's exercise of jurisdiction over the president/director/majority shareholder of a nonresident corporation, and its nonresident corporate attorney. The *Mihlon* Court stated, in dicta, "it is well established by California case law that for jurisdictional purposes the acts of corporate officers and directors, in their official capacities, are acts exclusively of (*qua*) the corporation, and are thus not material for purposes of establishing minimum contacts as to individuals. [Citations.] Implicit in this principle is the consideration that corporations are separate legal entities that cannot speak or act without their designated officers and directors. Accordingly, acts performed by individuals in such official capacities may not reasonably be attributed to them as individual acts creating personal jurisdiction." (*Id.,* at p. 713.)

*Mihlon,* however, does not mention *Calder* or *Keeton,* and the cases it cites as support of immunity for nonresident corporate officers and directors predate those Supreme Court decisions. Further, *Mihlon* did not automatically preclude jurisdiction under the "fiduciary shield doctrine," but based its decision on the facts. Thus, *Mihlon* does not support respondents' position.

 Whatever the purpose and function of the fiduciary shield doctrine, California's long-arm statute (Code Civ. Proc., § 410.10) expresses no intent to barricade transient tortfeasors from liability for their fraudulent conduct, and jurisdiction must be determined on the individual facts. Appellant's complaint and declaration allege that Messinger and Carow perpetrated a fraud aimed at her in California. It is conceded that at some point they each made personal contact with her and allegedly knowingly and intentionally misrepresented facts that induced her to execute agreements and transfer securities in California. Moreover, they knew that "the brunt

of that injury" would be felt by appellant "in the State in which she lives and works. . . ." (*Calder* v. *Jones, supra,* 465 U.S. at pp. 789-790 [79 L.Ed.2d at p. 812].) We have already determined that aside from their status as corporate fiduciaries, minimum contacts have been established. We think that given such facts, the analysis by the United States Supreme Court in *Calder* is appropriate here where the defendants were not mere employees, but, at least in the case of Messinger and Carow were the primary participants in negotiating and executing the buy/sell and employment agreements with appellant.

The essence of *Calder* is that intentional tortfeasors should be prepared to defend themselves in any jurisdiction where they direct their alleged tortious activity. Like the defendants in *Calder,* Messinger and Carow "are primary participants in an alleged wrongdoing intentionally directed at a California resident . . . ." (*Calder* v. *Jones, supra,* 465 U.S. at p. 790 [79 L.Ed.2d at p. 813].) We are in agreement with those courts that have concluded that an unreasonable and anomalous result would occur if a nonresident individual, acting in his capacity as corporate officer or director, committed a tort for which he may be personally liable and could shield himself from jurisdiction when he could not interpose the same shield as a defense to substantive liability. (See, e.g., *Davis* v. *Metro Productions, Inc.* (9th Cir. 1989) 885 F.2d 515; *Estabrook* v. *Wetmore* (1987) 129 N.H. 520 [529 A.2d 956]; *Hudson* v. *Moore Business Forms, Inc.* (N.D.Cal. 1985) 609 F.Supp. 467; *Columbia Briargate Co.* v. *First Nat. Bank, supra,* 713 F.2d 1052.)

Having concluded that Kripke, Katz and Antonelle lacked sufficient contacts to confer personal jurisdiction over them, the order quashing service on them is affirmed. As to Cohen, the order is affirmed for failure of service. As to Messinger and Carow, the order is reversed.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied February 8, 1990, and the petition of respondent Morrison for review by the Supreme Court was denied April 19, 1990. Lucas, C. J., and Arabian, J., were of the opinion that the petition should be granted.