Filed 10/13/21  LG Aviation v. Kimbrell CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| LG AVIATION, INC. et al., | |
| Cross-complainants and appellants, | E075256 |
| v. | (Super.Ct.No. CIVDS1818632) |
| JOSHUA KIMBRELL et al., | OPINION |
| Cross-defendants and respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed.

Smith Law Firm and Craig R. Smith for Cross-complainants and Appellants.

Barton Klugman & Oetting, Joseph Carpello and Terry L. Higham for Cross-defendants and Respondents.

1

Cross complainants and appellants LG Aviation Inc. (LG) and Mark Liker (Liker; collectively, Cross-complainants) appeal the order entered by the San Bernardino Superior Court granting a motion to quash service of summons on the cross-complaint filed by cross-defendants and respondents Joshua Kimbrell and Efrain Navarro (collectively, Cross-defendants).

LG, a Delaware corporation, purchased four aircraft that were brokered and financed by FX Aviation Capital, LLC (FX), a South Carolina company. Kimbrell was the Chief Executive Officer and Chief Operating Officer of FX; Navarro was also an executive officer. Liker was the CEO and part owner of LG. Hector Guerrero was a shareholder in LG and acted as a manager. Liker and Guerrero lived in California.

LG defaulted on the loans for the aircraft. Guerrero executed aircraft bills of sale transferring back ownership of two of the aircraft to FX, but failed to deliver the logbooks and maintenance records, which were required to be kept with the aircraft. FX filed a complaint in the San Bernardino County Superior Court seeking return of the paperwork, which they believed was in San Bernardino County, and for damages. Cross-complainants filed a cross-complaint claiming fraud on behalf of FX, and Kimbrell and Navarro personally, by misrepresenting the value and condition of the aircraft when purchased by FX, and by having Guerrero transfer the aircraft back to FX. Cross-defendants filed a motion to quash service of summons of the amended cross-complaint (Motion). The trial court granted the Motion finding both that Cross-defendants were not properly served, and they did not have sufficient contacts with California to subject them to jurisdiction.

2

On appeal, LG argues the trial court erred by granting the Motion since Cross-defendants (1) were properly served with the cross-complaint and they have sufficient contacts with California to subject them to jurisdiction in this case.

**FACTUAL AND PROCEDURAL HISTORY**

A.     TRANSACTIONS

In 2018, LG, a Delaware corporation, agreed to purchase four aircraft, with FX to provide financing for the purchase of the four aircraft.  These included a Boeing 737-AYO (Boeing); Embraer EMB 145EP (Embraer); and two Learjet 55 planes (Learjets).  Several loan agreements were signed between FX and LG for the four aircraft, and Liker and Guerrero signed personal guaranties.  Each of the agreements provided that FX was a South Carolina company and LG was a Delaware company.  The agreements included language that "[T]he rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of South Carolina."

On March 22, 2018, Guerrero delivered to FX an aircraft bill of sale returning the Boeing but failed to also deliver the logbooks and maintenance records, which were required to be in the aircraft.  Guerrero signed the aircraft bill of sale as the Manager of LG.  On July 6, 2018, LG delivered to FX the bill of sale for the Embraer but not the logbooks or maintenance records.  The aircraft was still in San Bernardino County and the logbooks and maintenance records were not returned to FX.  Guerrero signed this aircraft bill of sale as the Manager of LG.

3

B.     FX COMPLAINT AND WRIT OF POSSESSION

On July 18, 2018, FX and CF Aviation Trust LLC., a Delaware Corporation,[1] filed their complaint for claim and delivery and for damages in the San Bernardino County Superior Court (complaint).  The complaint named LG and Airlux Aircraft, Inc., a California Corporation (Airlux).[2]  They alleged despite transferring ownership of the Boeing and Embraer back to FX, LG had failed to deliver the logbooks and records.  It was believed the paperwork for both the Boeing and Embraer were located in San Bernardino County.  They alleged the Embraer was still in a hanger operated by Airlux. FX alleged they were unable to sell or receive a fair price for the aircraft without the logbooks.  FX sought an order directing Airlux and LG to return the records to FX, and they additionally sought damages.  The complaint was verified by Kimbrell as the CEO of FX.

Kimbrell submitted a declaration in support of the complaint.  Kimbrell was informed that Liker had moved the logbooks and records for the Boeing and Embrear to a facility in San Bernardino.  Kimbrell attested it would be nearly impossible to sell the two aircraft without the logbooks and records.  Kimbrell made a demand to Cross-complainants for the logbooks and records on July 11, 2018, but they were not returned.

---

[1]  CF Aviation Trust, LLC. had been transferred the Boeing by FX.  This company is not a party to the instant appeal.

[2]  Airlux is not a party to the instant appeal.

4

FX also filed an ex parte request for a writ of possession in San Bernardino County Superior Court for the logbooks and maintenance records. FX was granted the writ of possession of the logbooks and maintenance records.

C.    FIRST AMENDED COMPLAINT

On August 1, 2019, FX and CF filed a first amended complaint for claim and delivery; breach of loan agreements and security agreements; breach of unconditional guaranty agreements (FAC). They named Airlux, LG, Liker and Guerrero. Jurisdiction was appropriate in San Bernardino County based on a portion of the personal property that was subject to the action was located in the County.

FX declared that LG had borrowed $4,301,531.68 secured by the four aircraft. LG had defaulted on the loan agreements and FX was owed the total amount plus attorney's fees and costs. The first cause of action was for claim and delivery of the log books and maintenance records for the Boeing and Embraer. FX alleged several causes of action for breach of the notes and unconditional guaranties for the Embraer aircraft against LG, Guerrero and Liker. There were also causes of action regarding the Learjets and failure to pay on the loans. There were additional causes of action for the default on the loans for the Boeing against LG, Liker and Guerrero. FX plead the damages owed for each of the notes that were in default.

Attached to the FAC were the numerous loan agreements for the Boeing, Embraer and Learjets that were entered into between FX and LG, and the guaranties signed by Liker and Guerrero as individuals. All of the loan agreements stated that FX was a South Carolina company and LG was a Delaware company. There was nothing indicating the

5

contracts were executed by FX, Kimbrell, or Navarro in California. For the personal guaranties by Liker and Guerrero, and the loan agreements, it was represented that they were negotiated in South Carolina and any default should be litigated in South Carolina although litigation in other forums could be initiated if necessary.

D.    CROSS-COMPLAINT

On September 5, 2019, Cross-complainants filed their cross-complaint for declaratory relief; rescission; fraud; usury; breach of fiduciary duty; conversion; constructive trust; and accounting (cross-complaint).[3] They named FX, CF, Navarro, Kimbrell and Guerrero. They declared that LG was a Delaware company licensed to do business in California and that FX was a South Carolina limited liability company doing business in California. Cross-defendants were South Carolina residents but doing business in California.

LG alleged that FX engaged in misconduct in making the loans on the aircraft. FX and their "representatives Navarro and Kimbrell" were a brokerage and financing entity specializing in aircraft. LG alleged that Cross-defendants "on behalf of FX" misrepresented the appraised value and condition of the Boeing, Learjets and Embraer. LG stopped making payments on the loans. Cross-complainants alleged Guerrero executed aircraft bills of sale of the Boeing and Embraer back to FX without permission

---

[3] LG refers to a cross-complaint for damages filed on September 12, 2018, and an amended cross-complaint filed on September 5, 2019. However, the citation is to the same document. The case sheet lists an amended cross-complaint filed on September 12, 2018, by LG and Airlux. The cross-complaint included in the record was filed on September 5, 2019, and was in response to the FAC. It appears to be the operative cross-complaint for this appeal, which we will refer to as the cross-complaint.

of LG. LG alleged that they were entitled to recission of the loans because they were induced by fraud. They alleged that "FX, by and through its representatives Navarro," and Cross-defendants individually, made misrepresentations as to the value of the aircraft. They alleged that the representations as to appraised value of the aircraft and their condition was false. They alleged that FX had not appraised the Embraer or Boeing and the value was far less than $3,210,000. The Learjets were not appropriate for medical transport despite being represented as such. The Boeing was in poor condition. Further, no consideration was owed to FX because all aircraft had been returned to their possession. Moreover, the interest charged was usurious under California law. Cross-complainants sought damages in excess of seven million dollars. No declarations or additional evidence was provided with the cross-complaint.

E.     MOTION TO QUASH SERVICE OF CROSS-COMPLAINT

In December 2019, Cross-defendants filed their Motion. The Motion was based on the failure to properly serve Cross-defendants and lack of personal jurisdiction. Cross-defendants did not have sufficient minimum contacts with California to subject them to personal jurisdiction. Further, Cross-defendants were served at the FX offices in South Carolina, but it was not their residences; they did not sign the return receipts; and did not authorize anyone to accept mail on their behalf. Cross-defendants were officers of FX and had no interests in California. They did not pay taxes, have an address, or maintain any offices in California. All of the loans signed by Cross-defendants were as officers of FX, not individually.

7

LG filed its opposition to the Motion on December 6, 2019. LG stated that Cross-defendants had been properly served at the FX office by registered mail service. The return mail receipts were signed. If the trial court found that the cross-complaint was not properly served, LG should be given an opportunity to properly serve it. Further, Cross-defendants were properly subject to jurisdiction in California. They were personally liable for their tortious conduct in California. Personal presence in California was not required; email and phone calls were sufficient. Cross-defendants communicated with Cross-complainants in California, and misrepresented the value and condition of the aircraft. They were liable for fraud. LG further noted that FX had filed the same lawsuit in South Carolina but it had been stayed pending the case in California.

Liker submitted a declaration in support of the opposition to the Motion. He stated he was contacted in 2016 by Navarro of the availability of the aircraft and financing through FX. There were several meetings in California negotiating the deal. Navarro advised Liker of the appraised value of the four aircraft. Kimbrell also represented the aircraft were a good deal. Liker signed all of the loans on behalf of LG in California. Further, the return receipts for the service of the cross-complaint were signed by someone at the FX offices.

Cross-defendants filed a reply to the opposition to the Motion. They insisted that LG had failed to allege in the cross-complaint that Cross-defendants had engaged in tortious conduct. Statements regarding the appraised value of the aircraft was not actionable, fraudulent misrepresentations. Further, representations that a property is "good" is not covered as a fraudulent misrepresentation. Further, LG had failed to show

that the Motion was properly served. There was no evidence that the person who singed the return receipts was authorized to accept service on behalf of Cross-defendants.

F.     RULING

The Motion was heard on January 16, 2020. The trial court tentatively ruled that the Motion would be granted. First, there was not sufficient evidence that Cross-defendants had been properly served. There were no return receipts signed by Kimbrell or Navarro or any other evidence "establishing authority over either person as accepting service." Second, the trial court found that LG had failed to show sufficient minimum contacts to subject Cross-defendants to jurisdiction in California. They were both South Carolina residents. They did not pay taxes in California. They had no P.O. boxes, addresses or places of business in California. There were no contracts signed in California. The trial court concluded, "And, thus, under the traditional notions of fair play and substantial justice, in accordance with case law, I don't find that the minimum contacts have been established, despite the representation that there were meetings that may have occurred, but those meetings were—by Mr. Kimbrell and Mr. Navarro were on behalf of the corporate entities and not individually."

LG's counsel argued that since Cross-defendants were involved in tortious conduct, e.g. fraud, they were personally subject to jurisdiction. The trial court reiterated that Cross-defendants were in California acting on behalf of FX and not as individuals.

FX argued the Boeing and Embraer were appraised; it was up to LG to decide to take the loan based on their own risk assessment. Further, LG had not alleged tortious conduct in the cross-complaint committed by Cross-defendants. The contracts were not

9

signed by FX in California and the choice of law was South Carolina. There was no independent tortious conduct by Cross-defendants.

The trial court granted the Motion based on its tentative ruling. The order granting the Motion was entered on January 29, 2020.

## DISCUSSION

Cross-complainants contend the trial court erred by granting the Motion both because the cross-complaint was properly served and there was sufficient minimum contacts to subject Cross-defendants to personal jurisdiction. We need not address whether there was appropriate service of the Motion as the trial court found that the Motion was also granted on the ground that LG failed to show that Cross-defendants had minimum contacts in California to subject them to jurisdiction on the cross-complaint. We agree and find the Motion was properly granted.

California courts may exercise jurisdiction over a nonresident defendant "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) "Personal jurisdiction may be either general or specific." (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090 (*DVI*).) Here, LG contends only that Cross-defendants are subject to specific jurisdiction. "[T]he defendant may be subject to specific jurisdiction if (1) ' "the defendant has purposefully availed [itself] of forum benefits" ' with respect to the matter in controversy, (2) ' "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum,' " ' and (3) the exercise of jurisdiction would comport with fair play and substantial justice.' " (*Id.* at p. 1090.)

10

Here, the evidence establishes that Kimbrell's and Navarro's only contacts with California were on behalf of FX. All of the loans were signed by Kimbrell as the CEO of FX. In fact, LG recognizes that Cross-defendants were acting as officers of FX when conducting business in California. LG contends the fact they were acting as officers and directors of FX did not shield them from liability based on their own tortious conduct expressly aimed at California.

"Corporate officers and directors cannot ordinarily be held personally liable for the acts or obligations of their corporation. However, they may become liable if they directly authorize or actively participate in wrongful or tortious conduct." (*Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 113.) To establish a basis for personal jurisdiction, the officer or director of a nonresident corporation must have personally directed or actively participated in tortious conduct, and that conduct must have been purposefully directed toward the forum state. (*Seagate Technology v. A.J. Kogyo Co.* (1990) 219 Cal.App.3d 696, 701-704 (*Seagate Technology*); *Taylor-Rush v. Multitech Corp., supra,* 217 Cal.App.3d at pp. 112-114) "Thus, some acts taken by a corporate officer are not only the acts of the corporation, but the acts of the individual. Where an act of this type creates contact with the forum state, that contact may be the contact of the individual as well as the contact of the corporation and, therefore, should be considered in determining if the forum state has personal jurisdiction over the individual." (*Seagate Technology*, at p. 702.) "[N]o personal contact would result from doing nothing more than ratifying an act taken by the corporation or by another corporate officer." (*Seagate Technology, supra,* at p. 704.)

11

"When the evidence of jurisdictional facts is not in dispute, whether the defendant is subject to personal jurisdiction is a legal question subject to de novo review. [Citation.] When evidence of jurisdiction is in dispute, the trial court's determination of factual issues is reviewed for substantial evidence. (*DVI*, *supra*, 104 Cal.App.4th at p. 1091.)

LG contends that Cross-defendants cannot shield themselves from liability by arguing they were acting as corporate officers. LG insists they directed their tortious activities to California residents in that they misrepresented the appraised value of the Boeing and Embraer and that the Learjets could be used for medical transportation. They further insist that Cross-defendants engaged in a scheme to steal back the aircraft through the use of fraudulent title documents obtained from Guerrero.

In determining personal jurisdiction, "we examine the nexus between" the contacts Cross-defendants had with California and the allegations in the cross-complaint. (*DVI*, *supra*, 104 Cal.App.4th at p. 1102.) The only evidence of tortious conduct was the bare allegations in the cross-complaint. However, LG did not allege that such tortious conduct occurred in California or that it was directed toward California. Also missing from the cross-complaint is any evidence that these statements were false regarding the appraised value of the Boeing and Embraer, or that the Learjets could not be used for medical transport. There is no appraisal of the aircraft or evidence of the inadequacy of the Learjets provided that contradicts the representations by FX, Navarro or Kimbrell. While a "plaintiff need not prove the truth of the allegations constituting the causes of action in order to justify an exercise of jurisdiction over nonresident parties, . . . the plaintiff must

'present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." ' " (*Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 228 (*Edmunds*).)

Moreover, as to the transfer from Guerrero of the aircraft back to FX, all the evidence established that Guerrero had the authority to sign for LG. While LG argues that FX should have checked the California Secretary of State's website to determine that Guerrero could not sign for LG, this was not alleged in the cross-complaint. Nothing in the cross-complaint supports that Guerrero was not authorized to sign on behalf of LG. The burden of showing jurisdiction must be "met by competent evidence in affidavits and authenticated documentary evidence." (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1233.) No such evidence of tortious conduct was presented with the cross-complaint.

Additionally, as noted by the trial court in its ruling, Cross-defendants at all times were representing FX, and did not personally commit tortious conduct directed toward California. Cross-complainants simply rely on the allegations in their cross-complaint to prove that Cross-defendants were personally engaged in tortious conduct subjecting them individually to subject jurisdiction, which as stated, is insufficient. Further, there is nothing in the cross-complaint alleging that the tortious conduct was committed in California or directed toward California. This was not sufficient to pierce the veil of the corporation to find Cross-defendants were subject to personal jurisdiction in California.

Cross-complainants insist that Cross-defendants personally availed themselves of the benefits of California and are subject to jurisdiction based on phone calls and emails

13

to Liker in California. Initially, the telephone calls and email contacts with LG, Liker and Guerrero by Cross-defendants were all in their capacity as officers of FX. Further, as stated, none of these acts were proven to be tortious conduct.

This case is similar to *Edmunds v. Superior Court*, *supra*, 24 Cal.App.4th 221. In *Edmunds*, a Hawaii attorney was sued for malpractice in California for his representation of a California client in Hawaii litigation. The attorney made phone calls to his client in California, wrote letters, conducted a deposition in California and took payment from the client from California. The attorney moved to quash the service of the summons and complaint. (*Id.* at pp. 225-226.) The appellate court agreed that the client did not establish the attorney's purposeful availment of benefits and protections of California law to subject the attorney to personal jurisdiction in California. "[W]e should keep in mind that Edmunds is an attorney licensed to practice in the State of Hawaii, who came to California in the context of representing his California client . . . in [a] deposition in a Hawaii action. The mere fact[] that to do so, he came to California, made phone calls and wrote letters to and from this state, and accepted payment from a California client, does not establish purposeful availment of the benefits and protections of California law." (*Id.* at p. 234.)

Here, FX was a South Carolina corporation that negotiated loans for the four aircraft with LG—a Delaware corporation. The only contact with California was phone calls and letters sent while negotiating the loans, and Liker and Guerrero on behalf of LG signed the loan agreements in California. FX sought to retrieve the logbooks for the aircraft by filing suit in California, but Cross-defendants acted on behalf of FX and there

14

was no evidence of personal tortious conduct to subject them to personal jurisdiction in California.

Cross-complainants have failed to meet their burden of establishing tortious conduct directed at California in connection with the cross-complaint as the basis for exercising personal jurisdiction over Cross-defendants.  The Motion was properly granted by the trial court.

## DISPOSITION

We affirm the grant of the Motion.  Costs of the appeal are awarded to respondents as the prevailing parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
                                       J.


We concur:


McKINSTER _____
                Acting P. J.


FIELDS _____
                J.