Filed 3/23/26  Dib v. Hamdan CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| JOSEPH DIB et al., | |
| Plaintiffs and Appellants, | G064817 |
| v. | (Super. Ct. No. 30-2024-01379003) |
| SALAM HAMDAN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of dismissal by the Superior Court of Orange County, H. Shaina Colover, Judge. Affirmed.

Law Office of Monica D. Dib and Monica Dib for Plaintiffs and Appellants.

Joseph S. Socher, Esq. and Joseph S. Socher for Defendant and Respondent.

\*          \*          \*

Plaintiffs Joseph Dib and R & R Life is Amazing LLC[1] challenge an order granting defendant Salam Hamdan's motion to quash service for lack of personal jurisdiction and dismissing him from the case. We conclude Dib failed to establish by a preponderance of the evidence that minimum contacts exist between Hamdan and California to justify exercising personal jurisdiction over him. We therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

K&A Kingdom Holdings, LLC (K&A) is a Wyoming limited liability company that owned residential real property in Buena Park, California (the Buena Park property). In October 2022, K&A sold the Buena Park property to 8217 Poinsettia Drive LLC (Poinsettia LLC). On behalf of K&A, Hamdan signed various documents necessary to effectuate this sale, including a grant deed and reconveyance. Just a couple months later, the property was sold again, this time to a third party, Hien Nguyen.

The gravamen of the action underlying this appeal (the present lawsuit) is that both 2022 transfers of the Buena Park property were fraudulent conveyances meant to hide Omar Daher's assets. Daher is alleged to be the "mastermind of the scheme" which was then carried out by the other defendants, including: K&A, Poinsettia LLC, Khaled Thaher (Daher's brother), Sad Thaher (Daher's son), Samuel Abraham, and Hamdan. K&A is alleged to be the alter ego of Daher, who is a "close friend and benefactor" of Hamdan. The exact ownership and corporate structure of K&A is not evident from the record.

At the time of the 2022 Buena Park property sales, a lawsuit (the first lawsuit) was pending in which Dib accused Daher, Hamdan, K&A and

---

[1] We refer to plaintiffs collectively as Dib.

2

several other defendants of fraud, breach of contract, and elder abuse, claiming tens of millions of dollars in damages. In the course of discovery, Hamdan sat for a deposition, but he was eventually dismissed from that lawsuit after the trial court granted his motion to quash service for lack of personal jurisdiction.

Subsequently, Dib filed the present lawsuit alleging Daher created K&A "for the specific purpose of preventing his creditors, including Plaintiffs, from reaching his real properties."

In response to the present lawsuit, Hamdan again filed a motion to quash service for lack of personal jurisdiction. Hamdan provided a declaration in support of his motion asserting he is an Arizona resident and has been since 1979. He further asserted he has never worked or resided in California and has never owned property in California.

As evidence of Hamdan's contacts with California, Dib provided Hamdan's deposition testimony from the first lawsuit, the documents signed by Hamdan related to the sale of the Buena Park property to Poinsettia LLC, and documents from both the California Secretary of State and the Wyoming Secretary of State regarding K&A and other entities. Dib provided a 2017 statement of information from the California Secretary of State for Thaher Holdings, LLC, the entity which transferred the Buena Park property to K&A in 2016. The 2017 statement of information lists Daher as the managing member of K&A and Hamdan as an agent for service of process, with an address in California at which he could be served. Dib also provided a 2018 statement of information for Thaher Holdings which lists Khaled Thaher as the managing member and as the agent for service of process indicating Hamdan no longer had that connection to California at the time of the alleged fraudulent conveyance. Dib's opposition also highlighted the evidence of

3

Hamdan's long-term friendships and familial connections with Daher and his other codefendants, including various business relationships over the past three decades and a marriage between Daher's daughter and Hamdan's son.

Dib also offered evidence of Hamdan's connection and role within K&A. In his deposition taken in the first lawsuit, Hamdan initially testified he was a member of K&A, but almost immediately corrected himself, stating he has never been a member of K&A. He stated he was merely a "service manager" responsible for signing documents and collecting rent. Hamdan did not know where K&A was formed, and testified he had no personal interest in any property owned by K&A. Hamdan further testified he understood K&A belonged to Khaled Thaher.

Hamdan admitted he signed documents related to the sale of the Buena Park property but testified he did so at Khaled Thaher's request. He confirmed his signature on the 2022 grant deed, which identifies him as a "member" of K&A, as well as on the reconveyance, which identifies him as an "authorized" signatory. Dib provided a 2021 annual report for K&A from the Wyoming Secretary of State which does not identify a managing member of K&A. Hamdan is not named in the 2021 annual report. Dib did not provide any further documents from the Wyoming Secretary of State, or any other evidence which might identify managers, members, or officers of K&A.

Ultimately, the trial court granted Hamdan's motion, finding Dib had "not satisfied the 'purposeful availment of forum benefits' element of the specific jurisdiction analysis." The court impliedly found Hamdan to be a member of K&A, stating Dib offered "no evidence in opposition to this motion as to why [Hamdan] can be sued in his individual capacity for an act that was done as a member and on the behalf of K&A." The court concluded Hamdan performed no action in his individual capacity. Accordingly, he had not

4

personally availed himself of the forum's benefits, and the court could not exercise specific personal jurisdiction over him. Hamdan was therefore dismissed from the litigation. Dib timely appealed.

DISCUSSION

I.

STANDARD OF REVIEW

Review of a trial court's ruling on whether a defendant is subject to personal jurisdiction is a purely legal question reviewed de novo, assuming facts are not in dispute. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540.) If a trial court makes a factual determination before making its ruling on jurisdiction, that determination is reviewed for substantial evidence, but the legal significance of the facts is still reviewed de novo. (*Dorel Industries, Inc. v. Superior Court* (2005) 134 Cal.App.4th 1267, 1273.) In applying substantial evidence review, the reviewing court "'must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. . . .'" (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 163.)

II.

THE TRIAL COURT DID NOT ERR IN DECLINING TO EXERCISE SPECIFIC PERSONAL JURISDICTION OVER HAMDAN

The "plaintiff bears the burden of establishing by a preponderance of the evidence that minimum contacts exist between the defendant and the forum state to justify imposition of personal jurisdiction." (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1312.) "Personal jurisdiction may either be general or specific." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445.) Dib challenges only

5

"the trial court's ruling as to whether there was specific jurisdiction over Hamdan." (Underscoring omitted.) A party may be subject to specific jurisdiction if he "has purposefully availed himself or herself of forum benefits [citation], and 'the controversy is related to or "arises out of" a defendant's contacts with the forum.'" (*Id.* at p. 446.)

Specific jurisdiction can be established if a party "purposefully availed itself of the privilege of conducting activities in California, or purposefully directed his activities toward California." (*Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 802.) Dib argues even though Hamdan signed the documents in Arizona, his acts were directed at California residents and had a negative effect on parties within the State of California. Therefore, the effects test outlined in the case of *Calder v. Jones* (1984) 465 U.S. 783 applies. The effects test is used to determine purposeful direction and is applied in the context of cases involving intentional torts (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 270 (*Pavlovich*)) and cases of fraud and misrepresentation (see *Casey v. Hill* (2022) 78 Cal.App.5th 1143, 1171). "[M]ost courts agree that merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test." (*Pavlovich*, at pp. 270–271.) The evidence must also show the defendant's acts were "*expressly aimed at or targeting* the forum state." (*Id.* at p. 271.)

Dib argues Hamdan knew the property was in California and its sale involved his friends and acquaintances in that state. "Hamdan had control of and directly participated in the activities giving rise to the lawsuit," and therefore, his "tortious conduct was purposefully directed at California." This may be enough to meet the requirement the acts be "*expressly aimed at or targeting* the forum state," (*Pavlovich, supra,* 29 Cal.4th at p. 271) but it

6

misses the foundational element of knowledge "his intentional acts would cause harm in the forum state." (*Id.* at p. 270.)

Hamdan was aware of the first lawsuit because he was a named defendant. Dib argues that by signing the paperwork for the first 2022 Buena Park property sale, Hamdan knew the property would be "beyond Plaintiffs' reach as creditors." However, Dib does not provide any evidence Hamdan knew the sale was a fraudulent conveyance or that he intended to assist the other defendants in hiding assets. Hamdan's individual tortious intent cannot be assumed based solely on his personal connections.

In fact, the evidence provided by Dib establishes the opposite conclusion: Hamdan had no intent to aid in a fraudulent conveyance. Hamdan testified he did not know why the property was being sold, he did not review the documents before he signed them, and he was simply following Thaher's instructions. His job was to sign papers, and he performed his duty without specific knowledge of the details.

Knowledge of an effect is not knowledge the effect is or could be harmful. Hamdan's signing of the sale documents creates a reasonable inference Hamdan understood the property would no longer belong to K&A, but not an inference Hamdan knew the sale would result in Dib's inability to collect a potential judgment. Dib provided no evidence Hamdan knew that. Moreover, at the time of the sale, the first lawsuit was still pending. Hamdan could not have known which party would prevail, whether judgment would be entered on Dib's behalf, or how much the judgment could be. And there is no evidence this was the only available asset from which a potential judgment could be collected. There is, therefore, no evidence Hamdan had knowledge his acts could cause Dib harm.

An inquiry into a party's purposeful direction "'focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich, supra,* 29 Cal.4th at p. 269.) Dib presented no evidence Hamdan stood to receive any benefit from the sale of the Buena Park property. The complaint alleges the fraudulent conveyance was intended to hide assets belonging to Omar Daher, not Hamdan. The grant deed shows the Buena Park property was owned and sold by K&A. Hamdan testified he had no interest in the property, and he did not receive or handle any of the money paid for the property sale. Dib argues Hamdan had a personal ownership interest in the Buena Park property because he was a member of K&A and he "intentionally executed real estate documents necessary for the transfer of the California real property owned by K&A." We disagree. Dib alleged the defendants are "the alter-egos, co-conspirators, and agents of [Daher]" and that the conspirators have such a "unity of interest and ownership that separate personalities of these entities and the individuals no longer exist." However, Dib provided no specific factual allegation, let alone evidence, Hamdan is an alter ego of K&A such that K&A's property could also be Hamdan's property.

"'[T]he defendant's knowledge and intent in committing the tortious activity' [is] the very focus of the purposeful availment requirement." (*Pavlovich, supra,* 29 Cal.4th at p. 272.) There is no evidence Hamdan had tortious intent. Without such evidence, Dib cannot overcome the substantial evidence supporting the trial court's factual findings that Hamdan's actions were performed on behalf of K&A, in his capacity as a member, rather than

8

in his individual capacity, or for his own benefit. Thus, the trial court did not err in finding a lack of support for the exercise of personal jurisdiction over Hamdan.

Dib concedes, as a member of K&A, Hamdan would not ordinarily be held personally liable for acts he performed on behalf of the limited liability company (*Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 113 (*Taylor-Rush*)), but argues this insulation does not protect Hamdan here because of his alleged tortious activities. A court may exercise jurisdiction over a foreign defendant if he "'commits an act or omission outside the forum state *with the intent* to cause a tortious effect within the state.'" (*Ibid.*) Personal jurisdiction can be extended to individuals acting in their capacity as corporate officers or directors, "if they directly authorize or actively participate in wrongful or tortious conduct." (*Ibid.*) Dib argues Hamdan's mere participation in the alleged fraudulent conveyance as a member of K&A and his relationships with the other defendants are enough to allow the court to exercise personal jurisdiction over him individually. *Taylor-Rush* does not support such a conclusion.

In *Taylor-Rush*, the defendants were alleged to have committed fraud and other misconduct in acquiring the plaintiff's company. (*Taylor-Rush*, *supra*, 217 Cal.App.3d at pp. 108, 114.) There was substantial evidence to establish the officers made various fraudulent misrepresentations and nondisclosures directed at the plaintiff in California. (*Ibid.*) In fact, two defendants did not even deny they made misrepresentations or the negative effect of their statements, arguing only that it was done on behalf of the corporate entity. (*Ibid.*) Thus, the court agreed sufficient minimum contacts were established for the exercise of personal jurisdiction over those two defendants. (*Ibid.*) There was no evidence the other defendants participated

9

in or directed any tortious act or omission toward the plaintiff. (*Ibid.*) A "bland allegation of conspiracy without a prima facie showing of its existence is insufficient to establish personal jurisdiction." (*Ibid.*)

Unlike the plaintiffs in *Taylor-Rush*, Dib offered no evidence of Hamdan's tortious intent or even that he knew of the negative impact his document signing could have on the plaintiffs. Further, the allegation Hamdan must have been in on the alleged fraud because of his relationship with the other defendants is insufficient on its own to establish personal jurisdiction under *Taylor-Rush*.

Dib next relies on *Coastal Abstract Service, Inc. v. First American Title Insurance Co.* (9th Cir. 1999) 173 F.3d 725 (*Coastal Abstract*), for the proposition that a corporate officer cannot "'hide behind the corporation where [the officer was] an actual participant in the tort.'" (*Id.* at p. 734.) A corporate officer is "personally liable for all torts which he authorizes or directs or in which he participates." (*Ibid.*)

*Coastal Abstract* is inapplicable to the question on appeal. There, a jury found the individual defendant, acting as an officer of First American, made a statement actionable under the Lanham Act. (*Coastal Abstract*, *supra,* 173 F.3d at p. 734.) The false statement was therefore intentionally tortious conduct. *Coastal Abstract* did not address the extension of personal jurisdiction to an individual defendant for acts taken on behalf of an entity. It simply addressed whether that individual defendant could be held personally liable for those tortious acts. Whether Hamdan could be found liable for signing the property transfer documents is not the question on appeal. The question is whether Hamdan's signing of the transfer documents is, in these circumstances, enough to establish tortious intent for purposes of determining he had minimum contacts with California. We find that it is not.

## DISPOSITION

The order granting Hamdan's motion to quash service for lack of personal jurisdiction and dismissing him from the action is affirmed. Respondent to recover costs on appeal.


BANCROFT, J.*

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.